**UNITED STATES of America,**
**Appellee,**

**v.**

**Tyrone MINGO, Defendant–Appellant,**

---

**Jerard Smalls, Defendant.**

**Docket No. 02–1711.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 5, 2003.

Decided: Aug. 14, 2003.

Alexander E. Eisemann, Katonah, NY, for Defendant–Appellant.

Daniel S. Ruzumna, Assistant United States Attorney, Southern District of New York (James B. Comey, United States Attorney, Meir Feder, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before: JACOBS, F.I. PARKER,* and SOTOMAYOR, Circuit Judges.

PER CURIAM.

Defendant Tyrone Mingo appeals from a final judgment of conviction entered in the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge* ), following his guilty plea to one count of conspiring to commit bank fraud, in violation of 18 U.S.C. § 371, and two counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. His sentence of imprisonment was enhanced under § 2F1.1(b)(8)(B) of the U.S. Sentencing Guidelines (2000) ("U.S.S.G." or the "Guidelines") based on findings that his offense "affected a financial institution," and that he "derived more than $1,000,000 in gross receipts from the offense." [1] *Id.*

---

* The Honorable Fred. I. Parker, who was a member of the panel, died following argument, and the appeal is being decided by the remaining two members of the panel, who are

in agreement. *See* 28 U.S.C. § 46(b); 2d Cir. R. § 0.14(b).

1. The district court concluded that Mingo's sentence should be calculated according to

■ Mingo arranged for nominees—often using stolen identities—to obtain mortgage loans that were used to purchase real properties. Mingo concedes that he controlled these real properties, and that their value, when added to the cash proceeds he obtained from his offense, exceeds one million dollars. He argues, however, that the full value of these real properties should not be considered "gross receipts from [his] offense" for purposes of U.S.S.G. § 2F1.1(b)(8)(B), because the victim banks that extended the loans secured mortgages on the properties, which reduced Mingo's equity and afforded the banks a cushion against any full loss. Mingo claims that the value of the liens therefore should be subtracted from the value of the properties for purposes of calculating his gross receipts from the fraudulent scheme.

The application notes accompanying § 2F1.1 broadly define "gross receipts from the offense" to include "all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." U.S.S.G. § 2F1.1 comt. n. 21 (2000) (citing 18 U.S.C. § 982(a)(4)); *see also Stinson v. United States,* 508 U.S. 36, 42–43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that Guidelines application notes are binding unless inconsistent with the underlying Guideline itself). It is undisputed that Mingo obtained use of the real properties as a result of his offense. Therefore, the district court properly looked not only at Mingo's cash receipts but to the value of these real properties in determining whether his "gross receipts from the offense" exceeded one million dollars for purposes of U.S.S.G. § 2F1.1(b)(8)(B). *See United States v. Bennett,* 252 F.3d 559, 566 (2d Cir.2001) ("[T]he defendant must

derive a million dollars from the offense, not from the financial institutions." (quoting *United States v. Monus,* 128 F.3d 376, 397 (6th Cir.1997))).

The Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789 (1990) ("CCA"), directed the Sentencing Commission to increase sentences for defendants whose offenses affected financial institutions where "the defendant derive[d] more than $1,000,000 in *gross receipts from the offense.*" CCA § 2507(a) (emphasis added). This language tracks that found in U.S.S.G. § 2F1.1(b)(8)(B). Mingo argues that, whatever the language of the CCA and the resulting Guidelines provision, the legislative history of the CCA reflects congressional intent that the enhancement apply only in the prosecution of individuals who *netted* more than one million dollars in criminally obtained proceeds.

■ Where, as here, the language of the Guidelines provision is plain, the plain language controls. *See United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 90 (2d Cir.1999) (citing *United States v. Lewis,* 93 F.3d 1075, 1080 (2d Cir.1996)); *see also United States v. Demerritt,* 196 F.3d 138, 141 (2d Cir.1999) ("[W]e must give the words used their common meaning, absent a clearly expressed manifestation of contrary intent." (quotation marks and citation omitted)); *United States v. Millar,* 79 F.3d 338, 346 (2d Cir.1996) ("As with statutory language, the plain and unambiguous language of the Sentencing Guidelines affords the best resource for proper interpretation." (quotation marks and citation omitted)). The Guideline itself (U.S.S.G. § 2F1.1) and its binding commentary plainly provide for a sentencing enhancement where, as here, the defendant's offense affects a financial institution and the

the November 1, 2000 Guidelines. Neither party has challenged this determination on

appeal.

defendant's gross receipts from that offense, including the value of any real property indirectly obtained from the offense, exceed one million dollars. *See Bennett,* 252 F.3d at 566. As the wording of the Guideline is subject to but one interpretation, it is unnecessary to consult other sources for interpretive guidance. Contrary to Mingo's contention, nothing in *United States v. Tomasino,* 206 F.3d 739 (7th Cir.2000), suggests that in these circumstances we need do otherwise.

For the reasons set forth above, the judgment of the district court is hereby affirmed.