17-1827-cr
*United States v. Yilmaz*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Submitted:  December 10, 2018          Decided: December 13, 2018)

Docket No. 17-1827-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

*- against -*

TOLGA SAFER YILMAZ,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

SACK, PARKER, and CHIN, *Circuit Judges.*

Appeal from a judgment of conviction of the United States District

Court for the Southern District of New York (Ramos, *J.*), sentencing defendant-

appellant principally to 37 months' imprisonment and three years' supervised

release for stalking in violation of 18 U.S.C. § 2261A.  Defendant-appellant

contends that the district court erred by applying a two-level sentence

enhancement under the United States Sentencing Guidelines for threatened use

of a dangerous weapon.  He also argues that his sentence is incongruous with

sentences imposed on other similarly situated defendants.

AFFIRMED.

Jane Kim and Sarah K. Eddy, Assistant United States
Attorneys, *for* Geoffrey S. Berman, United States
Attorney for the Southern District of New York,
New York, New York, *for Appellee.*

Jamesa J. Drake, Drake Law, LLC, Auburn, Maine, *for
Defendant-Appellant*.

PER CURIAM:

Defendant-appellant Tolga Safer Yilmaz appeals from a judgment of

conviction, entered June 8, 2017, following his guilty plea to one count of

stalking, in violation of 18 U.S.C. § 2261A.  He was sentenced principally to 37

months' imprisonment and three years' supervised release.  On appeal, Yilmaz

challenges the district court's application of a two-level sentence enhancement, in

accordance with the United States Sentencing Guidelines (the "Guidelines"), for

threatened use of a dangerous weapon. He also argues that his 37-month sentence is "incongruous with the sentences imposed on other similarly situated defendants." Def. Appellant's Br. at 18.

In 2008, while in college in Oregon, Yilmaz met a female student (the "Victim"). The two dated on and off through the Spring 2009 semester. In Fall 2009, after he had graduated, Yilmaz began harassing and stalking the Victim, physically as well as by email. He continued to stalk, harass, intimidate, and threaten her for almost seven years. Indeed, between October 2011 and April 2016, he sent some 10,694 emails to the Victim and her professors, administrators, other university personnel, students, family members, and friends. On some days, Yilmaz sent hundreds of such emails.

In Spring 2016, Yilmaz, who had returned to his home country, Turkey, began sending the Victim messages indicating that he was going to travel to New York -- where the Victim had relocated -- to confront her. He flew to Portland, Oregon in May 2016, where law enforcement officials arrested him. He was charged in the Southern District of New York with stalking, and he pled guilty and was sentenced as set forth above.

We review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014). This standard incorporates *de novo* review of questions of law, including our interpretation of the Guidelines, and clear error review of questions of fact. *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

I.    **Procedural Reasonableness**

Yilmaz argues that the two-level enhancement for threatened use of a dangerous weapon is inapplicable here because he never displayed a weapon, and the Victim did not perceive or find credible any weapon-related threat. This argument is unpersuasive.

A district court commits procedural error when it, *inter alia*, "makes a mistake in its Guidelines calculation." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). The Guidelines provide that the base offense level for stalking, eighteen, may be increased two levels if an offense involved one of five specified aggravating factors, including the "possession, or threatened use, of a dangerous weapon" or a "pattern of activity involving stalking, threatening, harassing, or assaulting the same victim." U.S.S.G. §§ 2A6.2(a), (b)(1)(D)-(E). If the offense

4

involved more than one of the five specified aggravating factors, the district

court may increase by four levels. *Id.* § 2A6.2(b)(1). Comments to the Guidelines

define a "dangerous weapon" as

> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (*e.g.* a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

*Id.* § 1B1.1 cmt. n.1(E).

Here, the district court imposed a four-level enhancement because it

found the offense involved two aggravating factors: the threatened use of a

dangerous weapon and a pattern of activity involving stalking, threatening,

harassing, or assaulting the same victim. *Id.* § 2A6.2(b)(1)(D), (E). Yilmaz does

not challenge the application of the second aggravating factor for a pattern of

activity.

The plain language of Section 2A6.2(b)(1)(D) requires either

possession *or* threatened use of a dangerous weapon, indicating that the latter

alone is sufficient grounds for the enhancement to apply. *See United States v.*

*Mingo*, 340 F.3d 112, 114 (2d Cir. 2003) ("Where [] the language of the Guidelines

provision is plain, the plain language controls."). Clearly, a knife may be wielded

5

as a dangerous weapon, and Yilmaz's messages stated an intent to severely harm or kill the Victim using such a weapon -- among the messages he sent her were the statements "I will kill [her]"; "I am going to slice [her] body"; "I am going to riddle your body"; and "[a]fter I cut your throat open." Present. Report ¶¶ 13, 14; *see Threaten*, <u>Oxford English Dictionary</u> (2d ed. 1989) (defining threaten as to "declare . . . one's intention of inflicting injury upon"); *United States v. Walker*, 665 F.3d 212, 232 (1st Cir. 2011) (referring to appellant's vow to "blow [the victim's] head off" as a "prototypical example" of evidence that "the appellant placed [the victims] in fear of harm through, in part, threats to use a gun"). Like the implied use of a gun in the threat to "blow [the victim's] head off" in *Walker*, Yilmaz's threat to "slice [the Victim's] body" and "cut [her] throat" clearly implied the use of a knife.

Moreover, the Guidelines' Commentary indicates that displaying a weapon is unnecessary as "a defendant [who] wrapped a hand in a towel during a bank robbery to create the appearance of a gun" would be subject to an enhancement concerning dangerous weapons. *See* U.S.S.G. § 1B1.1 cmt. n.1(E); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless

it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

Finally, Yilmaz argues that the threatened use enhancement is inapplicable because the Victim did not perceive the threat and find it credible. We are not persuaded. The Guidelines do not require that the victim be aware of the threat, as Section 2A6.2(b)(1)(D) simply requires that the offense "involved" the "possession, or threatened use, of a dangerous weapon." *See Mingo*, 340 F.3d at 114-15. In any event, the record suggests that the Victim in fact perceived and credited the threats. Accordingly, the district court's application of the sentence enhancement for threatened use of a dangerous weapon was appropriate and not procedurally unreasonable.

## II.    Substantive Reasonableness

Although Yilmaz does not explicitly challenge the substantive reasonableness of his sentence, he argues that his 37-month sentence "is incongruous with the sentences imposed on other similarly situated defendants." Def. Appellant's Br. at 18. To the extent this is a challenge to the substantive reasonableness of his sentence, it fails.

"[A] trial court's sentencing decision will be classified as error only if it 'cannot be located within the range of permissible decisions.'" *United States v. Bonilla*, 618 F.3d 102, 108 (2d Cir. 2010) (quoting *Cavera*, 550 F.3d at 189). District courts must consider the sentencing factors outlined in 18 U.S.C. § 3553(a), and on review, we account for "the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion." *Cavera*, 550 F.3d at 188, 190.

A 37-month sentence for Yilmaz's stalking of the Victim falls well within the range of permissible sentences. *See United States v. Lee*, 790 F.3d 12, 13-15, 19 (1st Cir. 2015) (upholding 100-month prison sentence for defendant who sent his estranged wife 300 emails, some including threats, in addition to other severe and threatening conduct); *United States v. Ull*, 370 F. App'x 225, 225-27 (2d Cir. 2010) (summary order) (upholding 18-month prison sentence for defendant who sent victim 1,400 messages between 1983 and 2007). Here, Yilmaz sent more than 10,500 emails not only to the Victim, but also to her family, friends, professors, coworkers, and supervisors. He falsely accused the Victim of academic misconduct, threatened her with extreme violence and death, and destructively impacted her private and professional life. In considering the § 3553(a) factors, the district court appropriately accounted for the severity and

8

duration of Yilmaz's conduct and the extent of the harm inflicted on the victim to impose a sentence within the Guidelines range. As the district court observed, the "offense was quite horrific," and "Mr. Yilmaz, it is safe to say, stole seven years of peace of mind from his victim." App'x at 161.

## CONCLUSION

For the reasons set forth above, the district court's judgment is **AFFIRMED**.