23-6118
*United States v. Swinton*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of April, two thousand twenty-four.

Present:

> REENA RAGGI,
> EUNICE C. LEE,
> BETH ROBINSON,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                      23-6118

KAREEM SWINTON,

> *Defendant-Appellant.*<sup>*</sup>

---

---

<sup>*</sup> The Clerk of Court is respectfully directed to amend the caption on the docket consistent with this order.

For Appellee:                                  CONOR    M.    REARDON
                                               (Natasha M. Freismuth, *on the
                                               brief*), Assistant United States
                                               Attorneys,   *for*   Vanessa
                                               Roberts Avery, United States
                                               Attorney for the District of
                                               Connecticut, New Haven, CT.

For Defendant-Appellant:                       SARAH    KUNSTLER,    Law
                                               Offices of Sarah Kunstler,
                                               Brooklyn, NY.

Appeal from a February 3, 2023 amended judgment of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Kareem Swinton ("Swinton") appeals from an amended judgment of conviction following a jury trial at which he was convicted of two counts: one count of conspiracy to distribute and possess with intent to distribute less than 500 grams of cocaine and a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; and one count of possession with intent to distribute and distribution of a controlled substance, in violation of 21 U.S.C. §§ 841 and 841(b)(1)(C). He was sentenced to 120 months' imprisonment on each count, to run concurrently, followed by a total of six years' supervised release.

Swinton argues that the district court (1) improperly admitted statements made by alleged co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E); (2) erred in denying Swinton's Rule 29 motion for acquittal on both counts; (3) failed to follow the correct procedures for imposing an enhanced sentence under 21 U.S.C. § 851; and (4) committed plain error in its calculation of Swinton's Sentencing Guidelines range, making his sentence procedurally and

2

substantively unreasonable. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to affirm.

\*                    \*                    \*

Because Swinton challenges the sufficiency of the evidence supporting both counts of conviction, at the outset, we summarize relevant evidence. At trial, the government argued that Swinton was part of a drug trafficking conspiracy with co-defendants Harold Butler, Robert Hall, David Sullivan, and Lorenzo Grier. To prove this, the government presented evidence of multiple controlled buys of cocaine base from Butler between 2018 and 2019, narcotics cutting agents and digital scales seized from Butler's residence, as well as a kilogram press for compacting narcotics, more cutting agents, and empty wax folds for distributing narcotics seized from Swinton's girlfriend's residence, where Swinton's photo identification card, travel receipts, and financial records were found.

Additionally, the jury heard evidence that Swinton was surveilled with coconspirators. Specifically, on October 7, 2018, Swinton was observed meeting with Butler at the Mohegan Sun casino, where they entered a restroom together, stayed for several minutes, and then left in a vehicle together. Swinton was also observed on multiple occasions entering coconspirators' properties with various bags and leaving empty-handed, consistent with drug transactions.

That conclusion was reinforced by calls between Swinton, Butler, Sullivan, and other indicted and unindicted coconspirators, which employed coded terminology that an expert witness testified referenced drug trafficking. For example, in one call, Swinton tells Butler the amount of product he would give him, and later that same day, the two were observed meeting at the Mohegan

3

Sun casino. In other cases, Swinton and Hall argue about the quality of a product supplied by Swinton, and Grier warns Swinton not to talk on the phone after a number of arrests in Connecticut.

In still other calls with unindicted or unidentified coconspirators, Swinton is heard discussing the quality of the product, the need for a buyer who did not pay for a large quantity of drugs to face consequences, the popularity and strength of different narcotics, a potential supplier who could work with Swinton, and when Swinton could resupply another drug dealer.

## I.      Coconspirator Statements

This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 87 (2d Cir. 1999). Swinton argues that the district court erred in admitting the aforementioned recorded conversations under Federal Rule of Evidence 801(d)(2)(E) because no evidence, other than the communications themselves, established a conspiracy or his membership therein.

Rule 801(d)(2)(E) provides that an out-of-court statement offered to prove the truth of the matter asserted does not constitute hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to admit a statement under this exception to the hearsay rule, a district court must find, by a preponderance of the evidence, that (1) there was a conspiracy, (2) its members included the declarant and the party against whom the statement is offered, and (3) the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993); *see Bourjaily v. United States*, 483 U.S. 171, 176 (1987); *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008). In considering these requirements, the "contents of the alleged coconspirator's statement itself" not only can be, but

4

"must [be,] consider[ed]." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). There must, however, also "be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (quoting *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)).

Swinton argues that the only independent evidence of the conspiracy involved him meeting with Butler and Sullivan and the physical evidence seized in the searches, which is not sufficient to establish a conspiracy or Swinton's involvement in it. In fact, the district court properly considered the further independent evidence of controlled drug purchases from Butler, Swinton's meeting with Butler and Sullivan, and Swinton's own recorded statements—which were not hearsay, *see* Fed. R. Evid. 801(d)(2)(A)—indicating an ongoing drug trafficking scheme. This independent evidence, in concert with the other parts of the phone calls, supported a finding that there was a drug trafficking conspiracy and that Swinton engaged in that conspiracy.

Additionally, the district court acted well within its discretion in finding by a preponderance of the evidence that the calls—in which individuals discussed the quality of the product, arranged transactions, and warned Swinton of his danger with law enforcement—were made in furtherance of the charged conspiracy and not mere buyer-seller relationships. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990) (finding that statements which "foster trust and cohesiveness," report on the "progress or status of the conspiracy," and "induce a coconspirator's assistance," may be found to be in furtherance of a conspiracy).

Nor did the district court abuse its discretion in admitting the calls between Swinton and unidentified coconspirators. *See United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993) (noting that declarant need not be identified for statement to be admitted under Rule 801(d)(2)(E)).

5

In sum, we reject Swinton's evidentiary challenge to his conviction as without merit.

## II. Sufficiency of the Evidence

Although we review *de novo* the denial of a Rule 29 motion for acquittal, *see United States v. Alston*, 899 F.3d 135, 143 (2d Cir. 2018), a defendant urging error bears a "heavy burden," *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)), because we will not overturn a conviction unless, "after viewing the evidence in the light most favorable to the [g]overnment and drawing all reasonable inferences in its favor, we determine that no rational trier of fact could have concluded that the [g]overnment met its burden of proof." *Id.* (internal quotation marks omitted).

### a. *Conspiracy*

Like the district court, we conclude that, when viewed in the light most favorable to the government, the evidence was sufficient for a rational trier of fact to have found "that Swinton joined a conspiracy with others including but not limited to Harold Butler, Robert Hall, and David Sullivan to distribute controlled substances in Connecticut." *United States v. Swinton*, No. 3:19-CR-65 (JAM), 2023 WL 831388, at *1 (D. Conn. Jan. 28, 2023). The totality of the evidence, including the recorded conversations described earlier, tended to show that Swinton not only provided narcotics for redistribution but also that he had continuing relationships with the members of the conspiracy, with whom there was mutual trust. This is at odds with Swinton's argument that the evidence necessarily showed only buyer-seller relationships rather than a conspiracy. *See United States v. Parker*, 554 F.3d 230, 234–35 (2d Cir. 2008). It is true, as Swinton contends, that "[a]t no point was he caught participating [in] a controlled drug buy. And no drugs were seized from his person or residence." Appellant Br. at 46. However, the jury was provided with evidence

6

of controlled buys from Butler, an ongoing relationship between Swinton and Butler, and dozens of intercepted communications between Swinton, Butler, and other coconspirators indicative of drug trafficking that did not make the jury finding of the charged narcotics conspiracy mere speculation, as Swinton contends.

### b. *Possession with Intent to Distribute*

The evidence was also sufficient for the jury to find Swinton guilty of possession with intent to distribute a controlled substance.  On December 8, 2018, Swinton was surveilled walking into Sullivan's apartment with a backpack and leaving without it.  That same day, Swinton was seen walking into Butler's shop below Butler's apartment and leaving a bag there after Butler was intercepted telling Swinton that he had "four of them s**ts left" and Swinton replied that he would "hit [Butler] when [he] get[s] up that way," to which Butler noted "it's grams out here, bro."  App'x at 561.

While it is true that this is circumstantial rather than direct evidence of Swinton's possession and distribution of narcotics on December 8, 2018, "the government is entitled to prove its case solely through circumstantial evidence."  *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).  A rational trier of fact could have concluded, by viewing these communications and meetings in the context of the totality of the evidence, that Swinton did indeed possess a controlled substance with an intent to distribute on December 8, 2018.

## III.    The Sentence Enhancement

Swinton argues that his case should be remanded for resentencing because the district court failed to follow the procedures delineated in 21 U.S.C. § 851 in imposing an enhanced sentence

based on a prior "serious drug felony," as defined by 21 U.S.C. § 802(57). Under § 851, before sentencing a defendant alleged to have a prior serious drug felony conviction, the court must ask the defendant if he affirms or denies the previous conviction and, if he denies it, the court shall hold a hearing to resolve any issues. *See* 21 U.S.C. § 851(b)–(c).

Swinton faults the court for not posing this inquiry to him but, rather, submitting the prior conviction question to the jury. Even assuming § 851(b) error, that "does not automatically invalidate the resulting sentence." *United States v. Espinal*, 634 F.3d 655, 665 (2d Cir. 2011). "[N]on-prejudicial errors in complying with the procedural requirements of § 851 should [not] require reversal."[1] *Id*. Here, the record makes clear that any purported error was harmless.

First, while the court may not have conducted a § 851 inquiry of Swinton, because Swinton had previously objected to the enhancement, the court still held a hearing—before the jury. Swinton does not argue that this was a less effective hearing than that which would have been required if Swinton had denied the allegations in response to a § 851 inquiry. Thus, he cannot show prejudice.

Second, while Swinton argues that he was denied due process because the court proceeded to the § 851 hearing under the assumption that a conspiracy conviction could qualify as a serious drug felony without addressing his pre-trial motion, he does not actually argue on appeal that a § 846 conspiracy conviction cannot qualify as a "serious drug felony" under the statute. Because he does not advance said argument on appeal, we consider it abandoned. *See United States v. Quiroz*,

---

[1] This Court has reserved decision on whether unpreserved challenges to § 851 procedural deficiencies should be reviewed for harmless error or plain error. *See Espinal*, 634 F.3d at 665 n.7. We need not resolve that question here, as Swinton's claim fails under both standards.

22 F.3d 489, 490 (2d Cir. 1994) (finding an argument not advanced on appeal to be abandoned).

As a result, Swinton has failed to show the district court's procedures prejudiced him.

## IV. The District Court's Sentence Was Not Procedurally Unreasonable.

A district court commits procedural error where it improperly calculates the Guidelines range. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc); *accord United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012). This Court reviews claims of procedural error *de novo* for questions of law and "clear error [for] questions of fact." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018). Additionally, "factual findings at sentencing need be supported only by a preponderance of the evidence." *United States v. Norman*, 776 F.3d 67, 76 (2d Cir. 2015).

Swinton argues that the district court committed procedural error at sentencing by relying on acquitted conduct in calculating his Guidelines range. Notwithstanding that the Supreme Court has held it permissible for a court to consider acquitted conduct in calculating a defendant's appropriate Guidelines range, *see United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Daugerdas*, 837 F.3d 212, 231 (2d Cir. 2016), the district court in fact went out of its way *not* to consider Swinton's acquitted conduct.

In calculating the drug quantity for which Swinton was responsible, the district court considered the multiple phone calls between Swinton and his coconspirators and found, by a preponderance of the evidence, that he transacted 735 grams of powder cocaine and 35 grams of crack cocaine. However, because the jury found that he had distributed less than 500 grams of powder cocaine, the court lowered the amount to 499 grams of powder cocaine so as not to "conflict with the jury's verdict." App'x at 444. The court also acknowledged the disparity between crack cocaine and powder cocaine in the Guidelines and declined to adopt it, treating the

9

crack cocaine as if it were powder. This gave the court a final calculation of 534 grams of powder cocaine, creating a base offense level of 24. *See* U.S.S.G. § 2D1.1(c).

Swinton argues that the weight calculated should have been lower, as there was no "basis for an assumption that the jury found the government had proven 499" grams of powder cocaine. Appellant Br. at 57. The court, however, was not required to ascertain the exact amount for which the jury found Swinton responsible. Rather, the court independently made its own calculation that a preponderance of the evidence demonstrated at least 735 grams—a calculation with which we identify no clear error—and used its discretion to reduce that number even further.

Swinton also argues that because the jury only convicted him for a "detectable amount" of crack cocaine, the court's finding that he was responsible for 35 grams was erroneous. Appellant Br. at 58. The court made this weight determination based on an intercepted communication between Swinton and Butler where Swinton says that he has "mixed" it and "it's . . . like about 35." App'x at 437, 575. We see no error with this finding.

Even if we did find error, Swinton himself acknowledges in his briefing that the "detectable amount" the jury arrived at was likely 23.6298 grams of crack cocaine. Appellant Br. at 59. Because the Guidelines level of 24 begins at 500 grams of cocaine, any error would be harmless, as the court would have needed to find only one gram of crack cocaine for Swinton to fall within the same Guidelines level, given its permissible attribution of 499 grams of powder cocaine to Swinton.

\*                              \*                              \*

10

We have considered Swinton's remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

                                          FOR THE COURT:
                                          Catherine O'Hagan Wolfe, Clerk of Court