23-6501-cr
*United States v. Williams*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand twenty-four.

PRESENT:      DENNIS JACOBS,
              SARAH A. L. MERRIAM,
                   *Circuit Judges*,
              JOHN P. CRONAN,
                   *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

    *Appellee*,

      v.                                   No. 23-6501-cr

RORY R. WILLIAMS, a/k/a Sealed Defendant #1,

    *Defendant-Appellant*,

---

[*] Judge John P. Cronan of the United States District Court for the Southern District of New York, sitting by designation.

FREDERICK A. POWERS, a/k/a Sealed Defendant #2,

*Defendant.*

_____

FOR DEFENDANT-APPELLANT: ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY.

FOR APPELLEE: THOMAS R. SUTCLIFFE, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*).

**UPON DUE CONSIDERATION,** the May 9, 2023, judgment of the District Court is **AFFIRMED**.

Defendant-appellant Rory R. Williams appeals from a final judgment of the District Court convicting and sentencing him, after a guilty plea, of one count of distribution and possession with intent to distribute N-Ethylpentylone in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

I. **Background**

On March 9, 2022, Williams and codefendant Frederick A. Powers, who is not a party to this appeal, were charged in a single-count indictment with distribution of and possession with intent to distribute an unspecified quantity of a Schedule I controlled

substance in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). The charge in the indictment stemmed from a controlled purchase of drugs on November 30, 2021, in which Williams directed Powers to distribute approximately 267 grams of N-Ethylpentylone ("molly") to a confidential source ("CS"). Williams told the CS to go to Powers's home to purchase the "molly." Once the CS and Powers met, Williams directed Powers (by telephone) to sell the "molly" to the CS for $2,500, which Powers did.

On July 14, 2022, Williams pled guilty to the sole count of the indictment pursuant to an agreement. The plea agreement contains three provisions relevant to this appeal. First, the agreement contains a "Factual Basis for Guilty Plea," in which Williams admits to the conduct underlying the indictment and to two uncharged drug transactions that occurred on December 21, 2020, and March 10, 2022. Second, the plea agreement contains "Sentencing Stipulations," wherein Williams admits personal accountability for specific drug quantities, "result[ing] in a base offense level of 32." App'x at 22-23. Third, the plea agreement contains an appeal waiver, in which Williams agrees to waive his right to appeal, *inter alia*, "[a]ny sentence to a term of imprisonment of 168 months or less." App'x at 24.

After his change of plea hearing, but before sentencing, Williams filed a *pro se* letter expressing dissatisfaction with his retained counsel and requesting that the District Court vacate his guilty plea. He also asked: "Could you please give me new counsel?" App'x at 73. The District Court held a hearing to discuss this letter with Williams and his retained counsel, during which Williams was presented with three options: continue with retained counsel; hire new counsel; or proceed *pro se*. Williams elected to continue with

3

his retained counsel.

The District Court sentenced Williams principally to a term of 120 months of imprisonment. Williams timely appealed.

## II.    **Appeal Waiver**

We first consider whether the appeal waiver in Williams's plea agreement bars our consideration of any of Williams's arguments. The government asserts that the appeal waiver bars all of Williams's challenges but "declines to assert the waiver as to" the denial of the request for new counsel.  Gov't Br. at 22 n.7. Williams contends that the appeal waiver is entirely unenforceable because it was not supported by consideration. "We review interpretations of plea agreements de novo and in accordance with principles of contract law. Further, we construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (citations and quotation marks omitted).

Under the circumstances of this case, the government may not be entitled to seek *partial* enforcement of the appeal waiver, *see, e.g.*, *United States v. Borden*, 16 F.4th 351, 355-56 (2d Cir. 2021); *United States v. Ojeda*, 946 F.3d 622, 629-30 (2d Cir. 2020), although the parties have not fully briefed this issue. Williams also argues that the appeal waiver in his plea agreement was not supported by adequate consideration. *See generally United States v. Lutchman*, 910 F.3d 33 (2d Cir. 2018). But we need not reach the issue of whether the appeal waiver is enforceable, in whole or in part, because as set forth below, we find no prejudicial error.

### III. **Motion to Substitute Counsel**

Williams challenges the District Court's denial of his motion to substitute counsel,[1] asserting, in relevant part, that the District Court abused its discretion in summarily denying his motion.

"We review a district court's denial of a motion to substitute counsel for abuse of discretion." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001). "We consider four factors: (1) whether the motion for new counsel was timely; (2) whether the district court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was so great that it caused a lack of communication and prevented an adequate defense; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication." *United States v. Rainford*, 110 F.4th 455, 471 (2d Cir. 2024) (citations omitted).

Williams primarily argues that the District Court failed to adequately inquire into the basis for his motion to substitute. We are troubled by the District Court's failure to inquire into Williams's claims that his retained counsel refused to continue his representation without additional payment, and that counsel was not communicating with Williams and his family. The District Court did not address these claims with Williams; rather, it appears that the District Judge and counsel conferred off the record *without*

---

[1] Williams also requested that his "plea of guilt be vacated due to . . . ineffective assistance of counsel" because counsel "made me cop out to a dummy plea agreement." App'x at 72. These contentions, however, are contradicted by Williams's sworn statements during his plea colloquy that he understood the charge, had read the plea agreement, was pleading guilty voluntarily, and was satisfied with counsel's representation as of that date. In fact, from the time of his arraignment, Williams had expressed a desire to plead guilty and avoid trial.

Williams before an on-the-record hearing with Williams present was conducted. Furthermore, the District Court should have advised Williams that he had the right to re-apply for the appointment of counsel under the Criminal Justice Act because (1) Williams was initially found indigent, (2) he asserted that he was no longer able to pay his retained counsel, and (3) in his letter to the Court, he specifically requested appointment of a Federal Public Defender.

But we find that the District Court's failure to inquire further into the potential conflict, and to provide the full panoply of options for new counsel, was harmless. Williams's primary complaint was that counsel would not communicate with him or continue to represent him without additional payment, which Williams could not afford. But counsel continued to represent Williams through sentencing, and Williams never renewed his request for new counsel. Counsel appeared for two separate sentencing hearings. He submitted a primary sentencing memorandum of twelve pages, plus four character letters, in support of Williams. A few days before sentencing was scheduled to occur, counsel met with Williams, and as a result of that meeting, counsel filed a 19-page supplemental sentencing memorandum. At the final sentencing hearing, counsel made a thorough argument in support of Williams's request for a non-Guidelines sentence and presented live testimony from three family members on Williams's behalf. In sum, Williams was not deprived of the assistance of counsel.

While the District Court "should have conducted a formal inquiry" into Williams's complaints, which were substantial, "the failure to do so in this case was harmless." *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981); *see also Norde v. Keane*, 294 F.3d

6

401, 412 (2d Cir. 2002) ("Although the trial judge should have inquired into Norde's belief that he was not being properly represented, a review of the record shows that Norde at all times received vigorous and capable representation by his assigned counsel. Accordingly, as in *McKee*, the failure of the trial judge to inquire into Norde's request was harmless."); *United States v. Hsu*, 669 F.3d 112, 123 (2d Cir. 2012) (finding "no reason to disturb the sentence" after a request for new counsel was denied where defendant "was fully represented at all stages of the sentencing proceeding, during which defense counsel zealously represented" him, "presenting legal arguments and mitigating information both orally and in writing").

Based on this record, we find any error in the District Court's evaluation and denial of Williams's motion to substitute counsel was harmless.

## IV. Sentencing Challenges

At sentencing, the District Court adopted the factual statements contained in the Presentence Report ("PSR"), with no objection from Williams, and accepted the plea agreement. The District Court adopted the PSR's recommended "total offense level of 31, a Criminal History Category IV, and a recommended guideline imprisonment sentence of 151 to 188 months," without further findings. App'x 131. After considering the applicable Guidelines and the factors listed in 18 U.S.C. §3553(a), the District Court sentenced Williams principally to 120 months of imprisonment.

Generally, "a district court must make specific factual findings, by a preponderance of the evidence, to support any sentencing enhancement under the Guidelines. Though a district court may also adopt the findings in the presentence report,

7

that is sufficient only if those findings are adequate to support the sentence imposed."
*United States v. Esteras*, 102 F.4th 98, 110 (2d Cir. 2024) (citations and quotation marks omitted).

A. Standard of Review

We ordinarily review the procedural "reasonableness of a sentence under a deferential abuse-of-discretion standard. This standard incorporates *de novo* review of questions of law, including our interpretation of the Guidelines, and clear error review of questions of fact." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam). "A district court commits procedural error when it, *inter alia*, makes a mistake in its Guidelines calculation." *Id.* (citation and quotation marks omitted).[2]

B. Role Enhancement

Williams contends that the District Court procedurally erred in applying a two-level increase to his offense level pursuant to §3B1.1(c) of the Guidelines, and that the District Court's findings were insufficient to support application of the enhancement. We disagree.

"Section 3B1.1(c) provides for a two-level enhancement if a defendant's role in the offense of conviction was that of an organizer, leader, manager, or supervisor." *United States v. Garcia*, 413 F.3d 201, 223 (2d Cir. 2005) (quotation marks omitted); *see also* U.S. Sent'g Guidelines Manual ("U.S.S.G.") §3B1.1(c) (U.S. Sent'g Comm'n 2021). "A

---

[2] The government asserts that we should review two of Williams's sentencing challenges for plain error. But because we would affirm even on *de novo* review, we need not determine what standard applies.

defendant may properly be considered a manager or supervisor if he exercised some degree of control over others involved in the commission of the offense . . . .” *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (citation and quotation marks omitted). “To qualify for the enhancement, a defendant need only have managed or supervised one participant.” *United States v. Ojeikere*, 545 F.3d 220, 222 (2d Cir. 2008) (citation and quotation marks omitted).

Williams’s admissions in the plea agreement, together with the uncontested facts in the PSR, were sufficient to support the District Court’s imposition of the role enhancement. During the relevant time frame, Williams directed two others, including Powers, to deliver drugs to customers on his behalf. Williams also told Powers how much “molly” to sell and at what price. These facts are sufficient to establish, by a preponderance, that Williams “exercised some degree of control over others involved in the commission of the offense.” *Blount*, 291 F.3d at 217 (citations and quotation marks omitted); *see also* U.S.S.G. §3B1.1 cmt. n.4 (describing the factors a court should considering in determining whether a defendant held a leadership, organization, managerial, or supervisory role).[3] And “because the District Court expressly adopted the PSR,” the facts of which were sufficient to support the role enhancement, “it was not

---

[3] Williams’s argument that the role enhancement was unwarranted because he worked “collaboratively” with Powers lacks merit. Reply Br. at 15. Whether or not Williams directed Powers, “the Sentencing Guidelines only require that the defendant be an organizer or leader of one or more . . . participants.” *United States v. Si Lu Tian*, 339 F.3d 143, 156 (2d Cir. 2003). Because Williams directed at least one other co-conspirator in addition to Powers, the application of the role enhancement does not depend on the nature of his working relationship with Powers.

required explicitly to spell out any further analysis." *United States v. Watkins*, 667 F.3d 254, 264 (2d Cir. 2012).

## C.    Criminal History Points

Williams contends that the District Court erred by adding two criminal history points under former U.S.S.G. §4A1.1(d). The Application Notes to former section 4A1.1(d) explain: "Two points are added if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence, including . . . parole . . . ." U.S.S.G. §4A1.1 cmt. n.4 (U.S. Sent'g Comm'n 2021).[4] Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §1B1.3(a)(2). Williams asserts that the District Court erred in adopting the PSR without explicitly finding that the December 31, 2020, transaction constituted relevant conduct.

Williams's admissions in the plea agreement, together with the uncontested facts in the PSR, were sufficient to establish that the December 21, 2020, drug sale was part of the same course of conduct as the instant offense. These facts establish that Williams repeated the same type of criminal activity over time -- namely, the large-scale distribution of "molly" and similar synthetic drugs -- including on December 21, 2020,

---

[4] After Williams's sentencing, but before this appeal, section 4A1.1(d) was "amended and moved to section 4A1.1(e), with several changes that retroactively reduce the Guidelines ranges of certain defendants." *United States v. Esteras*, 102 F.4th 98, 107 (2d Cir. 2024). Williams asks that we "remand" on this issue "in the interests of justice," Reply Br. at 17, although he concedes he likely would not be eligible for retroactive relief. Regardless, "we may not, in the first instance, apply post-sentence amendments that embody a substantive change to the Guidelines." *United States v. Jesurum*, 819 F.3d 667, 672 (2d Cir. 2016) (citation and quotation marks omitted). Accordingly, we will "adjudicate his challenge based on the version of the Guidelines in effect at the time of sentencing." *Esteras*, 102 F.4th at 107 (citation and quotation marks omitted).

when he was on state parole. *See United States v. Colon*, 961 F.2d 41, 43-44 (2d Cir. 1992) (The district court did not clearly err in determining that uncharged sales were part of the same course of conduct where defendant "had repeated the same type of criminal activity over time and has engaged in an identifiable behavior pattern of specified criminal activity." (citation and quotation marks omitted)). Indeed, at sentencing the District Court explicitly noted Williams's role in "distributing large quantities of drugs," and that Williams's "involvement in this offense began over 25 years ago." App'x at 143-44.

The District Court did not err in adding two points to Williams's criminal history score under former section 4A1.1(d) based on Williams's admissions and the uncontested facts in the PSR. *See United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) ("Under our precedents, a stipulation in a plea agreement, although not binding, may be relied upon in finding facts relevant to sentencing.").

C.      Drug Quantity

Last, Williams contends that the District Court erred by accepting the drug quantity stipulation in the plea agreement without making a finding that it constituted relevant conduct.

The District Court did not err, let alone plainly err, in accepting the drug quantity stipulation to calculate Williams's base offense level. We have previously rejected similar arguments. *See, e.g.*, *United States v. Bradbury*, 189 F.3d 200, 208 n.4 (2d Cir.1999) (rejecting defendant's challenge to the district court's use of stipulated drug quantity for sentencing purposes, because his plea agreement "explicitly stated that the conspiracy

11

involved 378 pounds of marijuana, and [the defendant] agreed to this amount by signing that agreement"). Even if the District Court should have made an explicit finding, (1) the record clearly supports such a finding, with no need for further explanation, and (2) Williams cannot show that the omission affected his substantial rights because the District Court applied the quantity of drugs and base offense level to which Williams stipulated.[5]

We have considered Williams's remaining arguments and find them to be without merit. Accordingly, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Williams correctly notes that paragraph 10 of the PSR added an additional 770.98 grams of diptenylone that were not included in the stipulation. But as conceded by Williams, this inclusion "did not impact the offense level." Appellant's Br. at 33. Any error was therefore harmless.