22-1804(L)
*United States v. Frias*

# United States Court of Appeals
## For the Second Circuit

August Term 2023

Argued: March 19, 2024
Decided: May 16, 2024

Nos. 22-1804(L), 22-3083(Con)

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ADRIAN ESTERAS, AKA CHILLY, SHANE WILLIAMS,

*Defendants,*

CARLOS ESTERAS, RAPHAEL FRIAS, AKA RALPH, AKA RAFAEL FRIAS,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of New York
No. 21-cr-269, Glenn T. Suddaby, *Judge*.

Before:      CARNEY, SULLIVAN, and LEE, *Circuit Judges*.

Carlos Esteras and Raphael Frias appeal their sentences after entering pleas of guilty to fentanyl trafficking charges. Each argues that the district court

(Suddaby, *J.*) erred in calculating his respective Guidelines range. Specifically, Esteras contends that the district court erroneously calculated his base offense level by applying a two-level increase under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises" for narcotics trafficking and declining to apply a two-level reduction under U.S.S.G. § 3B1.2(b) for being a "minor participant" in the trafficking scheme. He also argues that the district court wrongly applied a two-point increase to his criminal history score under U.S.S.G. § 4A1.1(d) after finding that he was on parole at the time of the offense. Frias likewise asserts that the district court erred in applying the two-level premises enhancement under section 2D1.1(b)(12); he also contends that the district court improperly applied a four-level increase under U.S.S.G. § 3B1.1(a) for being an "organizer or leader" of the scheme and failed to adequately consider his mitigating evidence in declining to vary downwards. We affirm each of the district court's sentencing decisions except its application of the "organizer or leader" enhancement under section 3B1.1(a) to Frias. Accordingly, we **AFFIRM** Esteras's sentence and **VACATE** and **REMAND** Frias's sentence for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

> Cory Zennamo, Zennamo Litigation & Advocacy, PLLC, Ilion, NY, *for Defendant-Appellant Carlos Esteras*.
>
> ELIZABETH FRANKLIN-BEST, Elizabeth Franklin-Best, P.C., Columbia, SC, *for Defendant-Appellant Raphael Frias*.
>
> THOMAS R. SUTCLIFFE, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Carlos Esteras and Raphael Frias appeal their sentences after entering pleas of guilty to fentanyl trafficking charges. Each argues that the district court (Suddaby, *J.*) erred in calculating his respective Guidelines range. Specifically, Esteras contends that the district court erroneously calculated his base offense level by applying a two-level increase under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises" for narcotics trafficking and declining to apply a two-level reduction under U.S.S.G. § 3B1.2(b) for being a "minor participant" in the trafficking scheme. He also argues that the district court wrongly applied a two-point increase to his criminal history score under U.S.S.G. § 4A1.1(d) after finding that he was on parole at the time of the offense. Frias likewise asserts that the district court erred in applying the two-level premises enhancement under section 2D1.1(b)(12); he also contends that the district court improperly applied a four-level increase under U.S.S.G. § 3B1.1(a) for being an "organizer or leader" of the scheme and failed to adequately consider his mitigating evidence in declining to vary downwards. We affirm each of the district court's sentencing decisions except its application of the "organizer or leader" enhancement under section

3

3B1.1(a) to Frias. Accordingly, we **AFFIRM** Esteras's sentence and **VACATE** and

**REMAND** Frias's sentence for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Investigation and Defendants' Arrests

In late 2020, federal agents received information that Esteras and Frias (together, "Defendants") were selling fentanyl in the Syracuse area. Within a few months, agents began conducting controlled buys from both Defendants, as well as intercepting calls and texts on their phones. Investigators soon determined that Defendants were collaborating with one another as part of a larger, dispersed network of fentanyl distributors. Though Defendants obtained fentanyl from separate suppliers and typically sold to different customers, they had an agreement to supply each other's customers if either was unavailable. Esteras generally stored his fentanyl at his residence, while Frias stored his supply at the apartment of his mother, who helped Frias sell that fentanyl to customers on several documented occasions. Both Defendants also relied on other associates to help distribute their fentanyl supplies, including codefendants Adrian Esteras and Shane Williams (neither of whom is part of this appeal) and several other

4

subdistributors who bought fentanyl in bulk from Frias and resold it to other customers.

Federal officers arrested Defendants in July 2021. When searching Esteras's residence, agents found 66.9 grams of fentanyl in bags, 166 glassine envelopes containing a total of two grams of fentanyl, and two stamps used to mark envelopes containing fentanyl. Esteras thereafter admitted that he had been "obtaining between 30 and [40] bricks of fentanyl from his source of supply every week for the past year." Esteras Presentence Investigation Report ("PSR") ¶ 28; *see also* Esteras App'x at 53 n.1 (correcting a mistranscription in Esteras's PSR that incorrectly stated that he had obtained between "30 and 150" bricks per week). Esteras ultimately admitted, as part of his plea, to distributing at least 124 grams of fentanyl.

Agents likewise found thirteen grams of fentanyl in Frias's mother's apartment, along with multiple bundles of glassine envelopes. As part of his plea, Frias admitted that he distributed, or reasonably could have foreseen the distribution of, at least 132 grams of fentanyl.

**B. Esteras's Sentencing**

Esteras pleaded guilty to one count of conspiring to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). In calculating Esteras's Guidelines range, the PSR recommended the application of several sentencing enhancements. Specifically, the PSR determined that Esteras had used his residence "for the purpose of manufacturing or distributing" fentanyl, which triggered a two-level enhancement under U.S.S.G. § 2D1.1(b)(12). The PSR also added two criminal history points under U.S.S.G. § 4A1.1(d) after determining that Esteras was on parole when he committed his offenses.

Esteras objected to both of these enhancements at his sentencing, arguing (1) that the "maintain[ing] a premises" enhancement under section 2D1.1(b)(12) did not apply because he lived in the residence with his wife and children and therefore did not use it primarily for drug trafficking, and (2) that the parole violation enhancement under section 4A1.1(d) was inapplicable because he had been discharged from parole the day before federal agents conducted the first controlled buy from him. Separate from these enhancement challenges, Esteras

6

also argued that he was entitled to a two-level reduction in his offense level under U.S.S.G. § 3B1.2(b) because he was only a "minor participant" in the conspiracy.

The district court rejected these arguments, adopted the factual information contained in Esteras's PSR, and determined that his Guidelines range was 84 to 105 months' imprisonment. The court ultimately imposed concurrent 84-month terms of imprisonment for Esteras's two counts of conviction.

## C. Frias's Sentencing

Like Esteras, Frias pleaded guilty to one count of conspiring to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Frias's PSR applied a two-level enhancement under section 2D1.1(b)(12) based on Frias's use of his mother's residence for narcotics trafficking. It also applied a four-level enhancement under U.S.S.G. § 3B1.1(a) due to Frias's role as an "organizer or leader" of a criminal scheme involving five or more persons.

At his sentencing, Frias objected to application of the "organizer or leader" enhancement under section 3B1.1(a) but did not dispute the "maintain[ing] a premises" enhancement under section 2D1.1(b)(12). He also asked for a three-level

downward variance due to his long history of childhood trauma and recent efforts to get mental health treatment.

The district court rejected these arguments and adopted the PSR's factual findings and Guidelines calculation, concluding that Frias's Guidelines range was 120 to 150 months' imprisonment. The district court sentenced him to concurrent 135-month terms of imprisonment on the two counts of conviction.

## II. DISCUSSION

Where a defendant has preserved a challenge to a sentencing enhancement, we apply a mixed standard of review to assess whether the district court properly applied the enhancement. *See United States v. Si Lu Tian*, 339 F.3d 143, 156 (2d Cir. 2003). We first review the district court's factual findings for clear error, *see id.*, which we will find only where the record as a whole leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. Cuevas*, 496 F.3d 256, 267 (2d Cir. 2007) (internal quotation marks omitted). We then review *de novo* the district court's ultimate legal determination as to whether those factual findings support an enhancement under the Guidelines. *See Si Lu Tian*, 339 F.3d at 156.

However, where the defendant failed to object at sentencing to the district court's application of an enhancement, we review for plain error. *See United States v. Ware*, 577 F.3d 442, 452 (2d Cir. 2009). This requires the defendant to show (1) that there was an "error," (2) that is "clear or obvious," (3) that "affected the outcome of the district court proceedings," and (4) that "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations and internal quotation marks omitted).

On appeal, Esteras and Frias raise various challenges to their sentences, arguing that the district court erred either by applying certain enhancements or by failing to grant reductions. We address each challenge in turn.

**A. Esteras's Stash-House Enhancement Under Section 2D1.1(b)(12)**

Esteras argues that the district court erred when it enhanced his offense level pursuant to U.S.S.G. § 2D1.1(b)(12), otherwise known as the stash-house enhancement. This provision calls for a two-level increase to the offense level when "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). As the Guidelines commentary explains, the stash-house enhancement applies to any defendant who (1) knowingly (2) maintains (3) a premises (such as a "building, room, or

9

enclosure") (4) for the "purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." *Id.* § 2D1.1 cmt. n.17.

Though Esteras does not dispute that he knowingly maintained the residence at issue here (which he rented at the time), he argues that the enhancement cannot apply because the residence was a family home where he lived with his wife and children. This presents a matter of first impression in our Circuit, as we have not yet decided in a published opinion whether "a defendant's use of a premises as a home . . . categorically bar[s] application of the [stash-house] enhancement." *United States v. Vinales*, 78 F.4th 550, 553 (2d Cir. 2023).

We have little trouble rejecting Esteras's argument that a family home can never support an enhancement under section 2D1.1(b)(12). For starters, the Guidelines commentary – which we generally treat as authoritative when interpreting the Guidelines, *see Stinson v. United States*, 508 U.S. 36, 38 (1993) – forecloses a categorical rule of that sort. Indeed, the commentary to the stash-house enhancement explains that a premises can have more than one "primary" or "principal" use. U.S.S.G. § 2D1.1(b)(12) cmt. n.17 ("Manufacturing or distributing a controlled substance need not be the sole purpose for which the

10

premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises."). It is thus entirely possible for a dwelling to be "primar[il]y" used as *both* a residence and a narcotics distribution point. That a premises is used as a family home therefore does not categorically shield that residence from triggering an enhancement under section 2D1.1(b)(12). To hold otherwise would permit drug traffickers to "eva[de]" the enhancement by distributing narcotics out of family dwellings – a wholly illogical result. *County of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 178–79 (2020) (applying the general presumption against interpreting statutes in a way that creates "a large and obvious loophole").

Nor are we the first circuit to reach this result. Indeed, every other court of appeals to address this issue has likewise concluded that the use of a family residence for trafficking activities can, depending on the circumstances, trigger the stash-house enhancement. *See United States v. Melendez-Rosado*, 57 F.4th 32, 38 (1st Cir. 2023); *United States v. Gardner*, 32 F.4th 504, 526 (6th Cir. 2022); *United States v. Zamudio*, 18 F.4th 557, 562–63 (7th Cir. 2021); *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020); *United States v. Murphy*, 901 F.3d 1185, 1190 (10th Cir. 2018);

11

*United States v. George*, 872 F.3d 1197, 1206 (11th Cir. 2017); *United States v. Miller*, 698 F.3d 699, 706–07 (8th Cir. 2012). We see no basis to doubt or depart from these well-reasoned opinions, which looked (as we do here) to the commentary's clear command that a residence may be maintained for more than one primary purpose.

We must then decide whether, on the facts of this case, one of the primary uses of Esteras's home was to further narcotics trafficking. We resolve such inquiries by examining the "totality of the circumstances" surrounding the drug trafficking and the extent to which the residence was used to further that activity. *Vinales*, 78 F.4th at 553 (quoting *Murphy*, 901 F.3d at 1191) (using a totality-of-the-circumstances test to decide whether section 2D1.1(b)(12) applies); *see also United States v. McDowell*, 804 F. App'x 38, 40 (2d Cir. 2020) (same). We do so by considering factors such as (i) "the frequency and number of drug sales occurring at the home," (ii) "the quantities of drugs bought, sold, manufactured, or stored in the home," (iii) "whether drug proceeds, employees, customers, and tools of the drug trade . . . [were] present in the home," and (iv) "the significance of the premises to the drug venture." *Murphy*, 901 F.3d at 1191–92; *see also Melendez-Rosado*, 57 F.4th at 39 ("Pertinent circumstances typically include the activities observed, the quantity of drugs discovered, and the presence or absence of drug

12

paraphernalia and tools of the trade."). In applying these factors, we defer to any factfinding by the district court at sentencing that was not clearly erroneous, *see Cuevas*, 496 F.3d at 267, and accept as true any facts in the PSR that were not disputed by the defendant and were adopted by the district court, *see* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Rizzo*, 349 F.3d 94, 99 (2d Cir. 2003).

Applying that framework here, we see no error in the district court's conclusion that Esteras's use of his home qualified for the stash-house enhancement under section 2D1.1(b)(12). At sentencing, the district court adopted the undisputed factual information in Esteras's PSR and found that the trafficking activity at his home was "certainly . . . sufficient and significant enough" to warrant the enhancement. Esteras App'x at 67, 77. The undisputed facts bear out that conclusion. For starters, Esteras stored substantial "quantities of drugs" at his home, to the point that agents found sixty-six grams of fentanyl there on the day of his arrest alone. *Murphy*, 901 F.3d at 1191; *see also* Drug Enf't Admin., *Facts About Fentanyl* (2024), https://www.dea.gov/resources/facts-about-fentanyl [https://perma.cc/GP8X-67DY] (noting that "2 mg of fentanyl [is] considered a potentially lethal dose"). This was no isolated instance, as Esteras's PSR confirms that he "routinely" used his home to "store and package fentanyl for

13

redistribution," Esteras PSR ¶ 16 – a fact that Esteras admitted during his plea colloquy. The investigation also yielded a recording in which Esteras told an associate that he had been "bagging" fentanyl at the "crib" and servicing customers "[a]ll day." Esteras App'x at 26. And beyond the narcotics themselves, agents also found "tools of the drug trade" in Esteras's home, *Murphy*, 901 F.3d at 1191–92, including glassine envelopes used to distribute fentanyl and stamps used to brand the envelopes as containing fentanyl, *see* Esteras PSR ¶ 23. Finally, Esteras had no substantial source of legitimate income, bolstering the inference that he supported himself by using his home as a trafficking hub. *See United States v. Winfield*, 846 F.3d 241, 243 (7th Cir. 2017).

None of Esteras's counterarguments are persuasive. He argues, for instance, that his home could not qualify for the enhancement unless the government could prove that it "was utilized more frequently for illegal activity than as the family residence." Esteras Br. at 9. But while the Guidelines commentary advises sentencing courts to consider how "frequently" the property was used for "lawful" versus unlawful uses, U.S.S.G. § 2D1.1 cmt. n.17, we cannot agree that this requires a strict comparison whereby a dwelling cannot qualify as a stash house if it was used legally more often than illegally. Indeed, that sort of inquiry

14

would be tantamount to a categorical rule that excludes family homes from the enhancement, given that families use their main residences perpetually whereas drug storage and sales are necessarily intermittent. *See Miller*, 698 F.3d at 707 (rejecting this argument because section 2D1.1(b)(12) was "surely intended to deter the manufacture and distribution of illegal drugs in 'crack houses' where children are being raised"). In our view, the enhancement calls for consideration of additional factors beyond the rote frequency of usage, such as the level of narcotics stored at or distributed from the home and whether tools of the trade were found there.

Equally unpersuasive is Esteras's argument that the enhancement cannot apply because he used his residence less extensively than Frias used his mother's residence. A district court may apply the stash-house enhancement to multiple defendants in the same drug conspiracy; section 2D1.1(b)(12) contains no one-per-conspiracy limit. Regardless of what Frias did at his mother's home, the underlying facts support the district court's conclusion that Esteras used his residence for "sufficient and significant" trafficking activities, Esteras App'x at 67, which were more than "incidental or collateral" uses of the home, U.S.S.G. § 2D1.1

15

cmt. n.17. We therefore affirm the application of this enhancement to Esteras's Guidelines calculation.

**B. Esteras's Minor Participant Adjustment Under Section 3B1.2(b)**

Esteras next asserts that the district court erred in declining to apply a downward adjustment to his base offense level under U.S.S.G. § 3B1.2(b) because, according to Esteras, he was a "minor participant" in the criminal conduct. Whether a defendant qualifies as a minor participant is a "highly fact-specific" inquiry. *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993). Importantly, a defendant bears the burden of establishing that he is entitled to this mitigating adjustment, *see United States v. Wynn*, 37 F.4th 63, 67 (2d Cir. 2022), and we will disturb the district court's assessment only for clear error, *see United States v. Soto*, 959 F.2d 1181, 1187 (2d Cir. 1992).

After hearing arguments over Esteras's role in the trafficking conduct, the district court concluded that Esteras had not provided "sufficient evidence" to establish that he played only a "minor" role. Esteras App'x at 67. Esteras challenges that conclusion on appeal, arguing (among other things) that he had only a "small number" of customers, that he had a different supplier than Frias, and that he was generally part of an "independent" conspiracy and had no control

over Frias's distribution activities. Esteras Br. at 13–15. But none of these arguments compels a finding of clear error here. Even if he had a small number of customers, and even if those were separate customers from Frias's, Esteras still admitted to being responsible for distributing at least 124 grams of fentanyl. That drug weight was well above that of some of his coconspirators and even on par with that of Frias, who admitted responsibility for distributing 132 grams. Nor does it matter that Esteras and Frias generally had different suppliers and customers. Esteras and Frias were charged as part of the same conspiracy, in which they ran parallel distribution operations while also coordinating with one another to supply each other's customers if needed. We therefore see no reason to question the district court's conclusion that Esteras failed to establish his entitlement to a minor role reduction.

**C. Esteras's Parole Offense Enhancement Under Section 4A1.1(d)**

Esteras argues that the district court erred by assigning him two criminal history points under former U.S.S.G. § 4A1.1(d), which applied when the defendant "committed the instant offense while under any criminal justice sentence, including probation [or] parole." U.S.S.G. § 4A1.1(d) (2021). Before analyzing that challenge, we note that section 4A1.1(d) has since been amended

17

and moved to section 4A1.1(e), with several changes that retroactively reduce the Guidelines ranges of certain defendants. *See* U.S.S.G. app. C amend. 821 (narrowing new subsection (e) to apply only to offenders with more serious criminal histories and reducing from two to one the criminal history points added for defendants to whom the revised subsection applies). Esteras does not argue, at least on appeal, that these changes should be applied retroactively to him.[1] We therefore adjudicate his challenge based on "the version of the . . . Guidelines in effect at the time of sentencing." *United States v. Hendricks*, 921 F.3d 320, 331 n.51 (2d Cir. 2019).

Esteras's argument hinges on the contention that he was discharged from parole on May 19, 2021, exactly *one day* before federal agents first conducted a controlled buy from him. But even if it is true that Esteras made the first controlled sale on May 20, he admitted in his post-arrest interview in July 2021 that he had received "30 to [40] bricks of fentanyl from his source of supply every week for the

---

[1] While this appeal was pending, the district court purported to *sua sponte* reduce Esteras's sentence under 18 U.S.C. § 3582(c), presumably in light of the retroactive amendments to section 4A1.1. The district court lacked jurisdiction to take such action during the pendency of this appeal, *see United States v. Jacques*, 6 F.4th 337, 342 (2d Cir. 2021), and eventually vacated its resentencing order in recognition of that fact. Because Esteras does not ask this Court for retroactive relief, we do not consider it here. Once the Clerk of Court issues the mandate for this appeal, the district court (or Esteras) is free to raise this issue again, as appropriate.

past year." Esteras PSR ¶ 28. As the district court explained, "it [would] lack[] all common sense to say that . . . Esteras was not involved in [the relevant conduct] while he was on state parole supervision." Esteras App'x at 73. Given Esteras's undisputed confession of this earlier criminal conduct, we do not see how the district court's conclusion could be clear error.

**D. Frias's Stash-House Enhancement Under Section 2D1.1(b)(12)**

Turning to Frias, he first challenges the district court's application of the stash-house enhancement based on his use of his mother's residence. Unlike Esteras, however, Frias did not object to the district court's application of this enhancement at sentencing. We thus review his challenge for plain error. To qualify as "plain," an error must be "clear under current law." *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) (internal quotation marks omitted). To that end, "[w]e typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." *Id.* (internal quotation marks omitted). Absent such controlling precedent, we will notice plain error only in the "rare case" where the error was "so egregious and obvious as to make the trial judge and prosecutor derelict in

19

permitting it, despite the defendant's failure to object." *Id.* (internal quotation marks omitted).

Frias argues that the district court plainly erred in applying the enhancement because he did not "maintain" the premises – his mother did. He also contends that the residence was not primarily used for narcotics trafficking, since he did not live there and merely used it "occasionally" to store fentanyl in a drawer. Frias Br. at 16–17.

We cannot say that it was plain error for the district court to apply the stash-house enhancement to his sentence. Indeed, the very fact that these questions are unresolved – in that neither we nor the Supreme Court has foreclosed application of the enhancement on facts like these – precludes reversal for plain error. *See Whab*, 355 F.3d at 158. And Frias certainly falls short of showing that the alleged error was "so egregious and obvious" that the district court was "derelict" in applying the enhancement. *Id.* (internal quotation marks omitted). To the contrary, there was certainly evidence – including facts in Frias's PSR to which he did not object – suggesting that Frias maintained the residence for a primary purpose of narcotics trafficking. The Guidelines commentary makes clear that a defendant can "maintain" a premises within the meaning of section 2D1.1(b)(12)

20

even if he does not own or have a possessory interest in it, so long as the defendant sufficiently "controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. At the very least, Frias arguably exercised such control over the residence here, in that he "often stored fentanyl there," Frias App'x at 98, regularly conducted "hand-to-hand" drug transactions right outside the residence, Frias PSR ¶ 15, and at times even directed his mother to retrieve and distribute the stashed narcotics to his customers, *see id.*; Frias App'x at 116–18. Along similar lines, the facts also suggested that Frias put his mother's home to a primary use of drug trafficking. He conducted daily drug deals from the home, including two controlled purchases totaling more than twenty grams. Agents also uncovered thirteen grams of fentanyl, along with "multiple bundles of glassine envelopes," at the residence immediately following Frias's arrest. Frias PSR ¶¶ 13, 15, 26. Because any error was far from plain, we affirm the application of this enhancement to Frias's Guidelines calculation.

### E. Frias's Variance Based On Mitigating Factors

Frias argues that the district court failed to adequately address his evidence of mitigating circumstances and, as a result, erred in failing to grant him a downward variance. "We entertain a strong presumption that the sentencing

21

judge has considered all arguments properly presented to him, unless the record clearly suggests otherwise. This presumption is especially forceful when . . . the sentencing judge makes abundantly clear that he has read the relevant submissions and that he has considered the [section] 3553(a) factors." *United States v. Negron*, 524 F.3d 358, 361 (2d Cir. 2008) (alterations and internal quotation marks omitted).

In his sentencing submission, Frias detailed a traumatic childhood in which he regularly witnessed drug use and domestic violence by his parents. He also identified steps he intended to take in order to address his mental health and substance abuse problems. But we see nothing in the record that "clearly suggests" the district court failed to consider this evidence in imposing Frias's sentence. *Id.* To the contrary, the district court expressly stated that it had considered "all the pertinent information including . . . submissions by counsel," Frias App'x at 236, engaged in an extensive colloquy with counsel over Frias's plans to change his life, *id.* at 232–36, and at one point acknowledged the "trauma" that Frias had experienced as a youth, *id.* at 233. It is "abundantly clear" that the district court considered Frias's mitigation evidence, and Frias falls well short of establishing otherwise. *Negron*, 524 F.3d at 361.

22

### F. Frias's Organizer Or Leader Enhancement Under Section 3B1.1(a)

Finally, Frias disputes the district court's decision to apply a four-level enhancement under U.S.S.G. § 3B1.1(a) on the grounds that he was an "organizer or leader" of criminal activity involving at least five persons. This provision sets forth different enhancements depending on whether a defendant was an "organizer or leader," as opposed to a "manager or supervisor." *Compare* U.S.S.G. § 3B1.1(a), *with id.* § 3B1.1(b). Organizers and leaders are generally distinguished from lesser managers and supervisors based on the degree of control they exercise over the enterprise. To that end, the commentary instructs courts to differentiate between the two categories by examining several factors, including (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in the planning or organizing of the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." *Id.* § 3B1.1 cmt. n.4. Notably, this provision does not require the defendant to have led or organized five persons; it requires only that the criminal activity involved five persons (or was "otherwise extensive") and that the defendant was an

organizer or leader of at least one of them. *See United States v. Gaskin*, 364 F.3d 438, 466–67 (2d Cir. 2004) (internal quotation marks omitted); *see also* U.S.S.G. § 3B1.1 cmt. n.2 ("[T]he defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.").

Ultimately, whether a defendant qualifies as an organizer or leader under section 3B1.1(a) is a legal question that we review *de novo*. *See United States v. Wisniewski*, 121 F.3d 54, 57–58 (2d Cir. 1997). In general, "[a] district court must make specific factual findings, by a preponderance of the evidence, to support any sentencing enhancement under the Guidelines." *United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010) (internal quotation marks omitted). Though a district court may also "adopt the findings in the presentence report," that is sufficient only "if those findings are adequate to support the sentence imposed." *Id.* (emphasis omitted).

At sentencing, the district court did not make separate factual findings as to the section 3B1.1(a) enhancement, and instead "adopt[ed] the factual information and Guidelines applications" contained in Frias's PSR. Frias App'x at 236. On that basis, the court determined that Frias acted as an organizer or leader and imposed a four-level enhancement under section 3B1.1(a).

24

Frias argues that the PSR's findings were inadequate to classify him as an organizer or leader.[2] Although the PSR concluded that Frias qualified for this enhancement because he "instructed his mother and his sister to retrieve and distribute fentanyl on his behalf," Frias PSR ¶ 37, Frias insists that he enlisted his mother's and sister's assistance only a handful of times, and that he did not pay them or otherwise "enmesh[]" them into his trafficking activities, Frias Br. at 12. In response, the government contends that we should also consider the fact – which the district court apparently did not rely on – that Frias gave instructions to several "subdistributors" (*i.e.*, wholesale buyers) on how to package and distribute the fentanyl that Frias sold them in bulk. Gov't Br. at 77.

We agree with Frias that, based on the record, he did not qualify as an organizer or leader under section 3B1.1(a). Frias was effectively an independent middleman who sold fentanyl in bulk to several customers. Although Frias operated in parallel with Esteras's dealing operation, Frias possessed no "decision making authority" over Esteras's distribution activities, nor did he engage in any significant "planning or organizing" of it. U.S.S.G. § 3B1.1 cmt. n.4. He simply

---

[2] Although Frias also argued below that his offense did not involve "five or more participants," U.S.S.G. § 3B1.1(a), he does not raise that argument on appeal. *See United States v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994) ("It is well established that an argument not raised on appeal is deemed abandoned." (internal quotation marks omitted)).

25

bought fentanyl from his own supplier and, on occasion, helped supply Esteras's customers as necessary. It is true that, on three occasions, Frias turned to his family members to assist when they were at the residence and Frias was unable to get there in time to service a customer. But in each instance, his mother and sister were unpaid, and there is no evidence suggesting that Frias directed them to be home at certain times or otherwise exercised "control and authority" over when or how they were to assist him in upcoming deals. *Id.* Nor did Frias exercise any significant degree of control over the subdistributors. *See id.* Although he gave them instructions on how to process the fentanyl he sold them, those directions were consistent with information provided by a distributor to a customer and not commands. *See, e.g.*, Frias App'x at 112–14 (recounting Frias's advice to break down the fentanyl with a card); *id.* at 116 (summarizing similar advice to another buyer). Nothing suggests that Frias had any "decision making authority" over whom his buyers were to sell to, when or where they were to sell fentanyl, or how much they should charge. U.S.S.G. § 3B1.1 cmt. n.4. Indeed, there was no division of labor here; this was essentially a one-man wholesale operation in which Frias called on Esteras and his family members for favors on rare occasions. Given the level of "decision making authority," "degree of participation in the planning or

26

organizing of the offense," and "degree of control and authority exercised over others," we find that Frias's activity did not rise to the level of an organizer or leader.

Even though Frias was not a leader or organizer – and therefore not subject to the four-level enhancement in section 3B1.1(a) – the question remains whether he warrants a three-level enhancement under section 3B1.1(b) for acting as a manager or supervisor. But that is a straightforward inquiry, as Frias conceded to the district court "that he merely managed/supervised his mother/sister" and "is responsible for the supervisory role he played in regard to his mother and sister." Frias App'x at 189–90 (Frias arguing at sentencing that section 3B1.1(b) should apply instead of section 3B1.1(a)). Given that we may "treat statements in briefs as binding judicial admissions of fact," Frias cannot now dispute application of the three-level enhancement under section 3B1.1(b). *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); *see also Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Admissions by parties are not subject to judicial scrutiny to ensure the admissions are fully supported by the underlying record."). We thus find that

Frias acted as a manager or supervisor and is subject to a three-level enhancement under section 3B1.1(b).[3]

### III.   CONCLUSION

For the reasons stated above, we **AFFIRM** Esteras's sentence and **VACATE** and **REMAND** Frias's sentence for further proceedings consistent with this opinion.

---

[3] Of course, on remand the district court is not bound by the advisory Guidelines range and may impose whatever sentence it deems sufficient, but not greater than necessary, to meet the sentencing objectives of 18 U.S.C. § 3553(a). *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019); *United States v. Sindima*, 488 F.3d 81, 87 (2d Cir. 2007).