*United States v. Peatman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-five.

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.

DAMIEN PEATMAN, AKA DAMIEN KELLY,

> *Defendant-Appellant*.

24-2150-cr

---

| | |
|---|---|
| FOR APPELLEE: | Colin Owyang, Eugenia A. P. Cowles, and Gregory L. Waples, Assistant United States Attorneys, *for* Michael Drescher, Acting United States Attorney for the District of Vermont, Burlington, Vermont. |
| FOR DEFENDANT-APPELLANT: | Lisa B. Shelkrot, Langrock Sperry & Wool, LLP, Burlington, Vermont. |

Appeal from a judgment of the United States District Court for the District of Vermont (Christina C. Reiss, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on August 6, 2024, is **AFFIRMED**.

Defendant-Appellant Damien Peatman appeals from the district court's judgment of conviction following his guilty plea, pursuant to a plea agreement, to a superseding information, charging him with one count of possessing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

Peatman's conviction arose from an investigation following the murder of his stepfather, David Peatman, which occurred at the home Peatman shared with his mother Cindy and David (the "Peatman Residence"). Specifically, on December 1, 2022, three men broke into the Peatman Residence while Peatman, Cindy, and David were home. The men found Cindy and David watching television in David's bedroom and demanded money. During an ensuing altercation, David was shot. Upon discovering that there had been a break-in, Peatman escaped through his bedroom window and shortly thereafter re-entered the house, saw that David needed immediate medical attention, and called 911. On December 2, 2022, law enforcement searched the Peatman Residence, pursuant to a search warrant, and, among other things, found cocaine and other drugs, drug paraphernalia, and a handgun in Peatman's bedroom. Witness statements and text messages on Peatman's cellphone indicated that Peatman sold drugs from the Peatman Residence. On March 15, 2024, Peatman waived indictment and pled guilty to the one-count superseding information, charging him with possessing cocaine with intent to distribute.

2

In advance of sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which provided an advisory range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 70 to 87 months' imprisonment, resulting from a total base offense level of 27 and a criminal history category I. The total offense level was based on the following calculation: a base offense level of 26, pursuant to U.S.S.G. § 2D1.1; a two-level enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1); a two-level enhancement for maintaining a drug-involved premises, pursuant to U.S.S.G. § 2D1.1(b)(12); and a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

On August 5, 2024, Peatman was sentenced. In his pre-sentencing submissions, and again during the sentencing, Peatman objected to the application of the two-level enhancement for maintaining a drug-involved premises under Section 2D1.1(b)(12). At sentencing, the district court rejected Peatman's argument that he had not maintained a drug-involved premises and explained, in detail, the factual basis for applying the two-level enhancement under Section 2D1.1(b)(12). After adopting the Guidelines calculation and accompanying advisory range contained in the PSR, the district court weighed the relevant sentencing factors, pursuant to 18 U.S.C. § 3553(a), and principally imposed a below-Guidelines sentence of 29 months' imprisonment, followed by a term of three years' supervised release.

Peatman's sole argument on appeal is that the district court improperly calculated the applicable Guidelines range by including the two-level enhancement for maintaining a drug-involved premises under Section 2D1.1(b)(12).

"A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as

3

mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Sampson*, 898 F.3d 287, 311 (2d Cir. 2018) (internal quotation marks and citation omitted). We generally review the procedural reasonableness of a sentence "under a deferential abuse-of-discretion standard." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam). However, a sentencing court's "underlying factual findings with respect to sentencing, established by a preponderance of the evidence, are reviewed for clear error." *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011) (per curiam) (internal quotation marks and citation omitted). Moreover, "[t]he district court's interpretation and application of the Sentencing Guidelines is a question of law, which we review *de novo*." *United States v. Kent*, 821 F.3d 362, 368 (2d Cir. 2016).

Pursuant to Section 2D1.1(b)(12), a district court may impose a two-level sentencing enhancement on "a defendant who knowingly maintain[ed] a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1(b)(12), cmt. n.17. Whether the enhancement applies is based on the totality of the circumstances. *See United States v. Vinales*, 78 F.4th 550, 553 (2d Cir. 2023) (per curiam). Among the factors district courts should consider in determining whether to impose the enhancement are "whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and [] the extent to which the defendant controlled access to, or activities at, the premises," U.S.S.G. § 2D1.1(b)(12), cmt. n.17, as well as "the frequency and number of drug sales occurring at the home," "the quantities of drugs bought, sold, manufactured, or stored in the home," "whether drug proceeds, employees, customers, and tools of the drug trade were present in the home," and "the significance

4

of the premises to the drug venture." *United States v. Esteras*, 102 F.4th 98, 105 (2d Cir. 2024) (alterations adopted) (internal quotation marks and citation omitted).

Here, we conclude that the district court committed no error in applying the two-level enhancement for maintaining a drug-involved premises under Section 2D1.1(b)(12). The district court determined—based on facts in the PSR which the district court adopted (with no objection by the parties)—that, at the Peatman Residence, Peatman maintained a locked bedroom, where law enforcement found an assortment of pills packaged in clear bags and pill bottles stored in a backpack; four bags of suspected psilocybin mushrooms stored in a closet; a box containing additional suspected controlled substances; drug paraphernalia, including a large quantity of sandwich bags, a scale, and cooking equipment commonly used to manufacture controlled substances; a drug ledger; a flag stating, "It's not a crack house, it's a crack home;" and a handgun. Moreover, law enforcement found plastic bags containing cocaine, assorted pills, and methamphetamine outside on the property surrounding the Peatman Residence, which the district court determined Peatman dropped as he escaped through his bedroom window on the night of his stepfather's murder.[1]

The district court also determined that witness statements and cell phone evidence further supported a finding that Peatman was running a drug-distribution business from the Peatman Residence. In particular, witnesses stated that they had purchased drugs at the Peatman Residence and had provided construction, plumbing, or cleaning services at the Peatman Residence in exchange for drugs from Peatman. For example, one witness stated that she participated in

---

[1] Law enforcement's search also uncovered from David and Cindy's bedrooms clear plastic bags, an apparent drug ledger, suspected psilocybin mushrooms, assorted pills, five suboxone strips, a clear plastic bag and a pill bottle containing bags of a white powdery substance, and counterfeit U.S. currency. The district court recognized that David had his own drug-distribution business and did not rely on the evidence found in David and Cindy's rooms in applying the two-level enhancement to Peatman's sentence.

Peatman's drug business by, among other things, assisting with transactions at the Peatman Residence. She also noted that Peatman allowed her to access his locked bedroom and that Peatman paid most of the bills for the Peatman Residence. Text messages found on Peatman's phone also indicated that drug transactions occurred at the Peatman Residence. Witness statements revealed that buyers sometimes retrieved cocaine that they purchased from Peatman from a vehicle parked in the driveway of the Peatman Residence. Indeed, one witness stated that the Peatman Residence was "the main place to go" in the area to purchase drugs. Joint App'x at 77.

Based on this overwhelming evidence in the record, we find no basis to disturb the district court's application of a sentencing enhancement for maintaining a drug-related premises under Section 2D1.1(b)(12). *See Esteras*, 102 F.4th at 108–09 (finding the district court did not plainly err by applying the drug-involved premises sentencing enhancement to a defendant who used his mother's residence to store drugs and drug paraphernalia and conducted drug transactions directly outside); *see also United States v. Griswold*, No. 23-7806-cr, 2024 WL 4601448, at *1 (2d Cir. Oct. 29, 2024) (summary order) (finding the district court did not err in imposing a Section 2D1.1(b)(12) sentencing enhancement where there was evidence that the defendant executed drug transactions at his home and law enforcement found drugs, packaging equipment, and large amounts of cash there).

Peatman's arguments to the contrary are unavailing. He first argues that the sentencing enhancement should not have applied because he did not "maintain" the Peatman Residence. In particular, Peatman contends that, contrary to the Guidelines commentary's definition of "maintain[]," U.S.S.G § 2D1.1(b)(12), cmt. n.17, he had no possessory interest in the property because it was owned by his mother and he never paid rent, and he did not control access to the property because there is no evidence he "had the authority to exclude people or determine who

6

came or went from his parents' home," Appellant's Br. at 10. As an initial matter, whether a defendant has a possessory interest in a property is just one factor a court should weigh in considering whether to impose the sentencing enhancement. *See Esteras*, 102 F.4th at 108 ("The Guidelines commentary makes clear that a defendant can maintain a premises within the meaning of section 2D1.1(b)(12) even if he does not own or have a possessory interest in it." (internal quotation marks and citation omitted)). In any event, the record contains ample evidence for the district court to have found, by a preponderance of the evidence, that Peatman controlled access to the Peatman Residence. Indeed, as explained above, Peatman conducted drug transactions at the property, had buyers retrieve drugs from a vehicle parked on the property, admitted people onto the property and into the home to assist in his drug-distribution business and to provide construction, plumbing, and cleaning services in exchange for drugs, and paid most of the bills for the property. Therefore, the district court did not err in determining that Peatman "maintained" the Peatman Residence for purposes of the sentencing enhancement under Section 2D1.1(b)(12). *See Esteras*, 102 F.4th at 108 (finding no plain error in the district court's finding that the defendant maintained control of his mother's residence for purposes of the Section 2D1.1(b)(12) sentencing enhancement because he stored drugs at the home and conducted transactions right outside of it); *see also United States v. Holley*, 638 F. App'x 93, 98 (2d Cir. 2016) (summary order) (finding evidence sufficient to support a finding that a defendant "controlled access" to, and thus maintained, an apartment he did not own where, *inter alia*, the record indicated he had personal effects in, and unrestricted access to, the apartment).

In any event, the enhancement may be affirmed on the alternative theory that Peatman maintained a portion of the Peatman residence–that is, his bedroom–within the meaning of Section 2D1.1(b)(12). Peatman argues that the sentencing enhancement should not apply under

7

this theory because "the totality of the circumstances do not support that a 'primary or principal' purpose of [the defendant]'s bedroom was drug manufacturing or distribution." Appellant's Br. at 12. We disagree.

To be sure, "[m]anufacturing or distributing a controlled substance . . . must be one of the defendant's primary or principal uses for the premises." U.S.S.G. § 2D1.1(b)(12), cmt. n.17; *see Esteras*, 102 F.4th at 104–05. That requirement, however, is met here. As explained above, in Peatman's bedroom, law enforcement found controlled substances packaged in clear bags and pill bottles, as well as items commonly used in drug manufacturing or distribution schemes, including sandwich bags, a scale, cooking equipment, a ledger, and a handgun. Peatman also provided access to his bedroom to an individual who assisted him with his drug-distribution business by conducting sales, cooking powder cocaine into crack cocaine, and maintaining a ledger, and Peatman executed drug transactions in close proximity to his bedroom elsewhere on the property of the Peatman Residence. Thus, even if the relevant "premises" were limited to Peatman's bedroom, the record contains sufficient evidence to support a finding that a primary use of that premises was for manufacturing or distributing drugs. *See Esteras*, 102 F.4th at 106 (concluding that the district court did not err in finding that one of the primary uses of defendant's home was to further drug-related activity based on facts that the defendant stored drugs and glassine envelopes at the home and "servic[ed] customers" from it); *United States v. Sampel*, 860 F. App'x 789, 792 (2d Cir. 2021) (summary order) (finding no error in applying a Section 2D1.1(b)(12) sentencing enhancement where a search of defendant's home "resulted in the discovery of a digital scale with white powder residue, gloves, plastic bags, and a large amount of cash" and where the defendant "conducted at least two meetings at his home related to his drug business").

In sum, we find no legal or factual error in the district court's decision to apply the sentencing enhancement under Section 2D1.1(b)(12).

* * *

We have considered Peatman's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court