*United States v. Noeson*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand twenty-six.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                    No. 25-477

FRANK E. NOESON, III,

> *Defendant-Appellant.*

_____

| | |
|---|---|
| **For Defendant-Appellant:** | DANIEL S. NOOTER, Washington, D.C. |
| **For Appellee:** | TIFFANY H. LEE, Assistant United States Attorney, *for* Michael DiGiacomo, United States Attorney for the Western District of New York, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Western District of New York (Lawrence J. Vilardo, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 20, 2025 judgment of the district court is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** in part.   The remainder of the appeal is **DISMISSED**.

Frank Noeson appeals from a judgment following his plea of guilty to one count of knowing receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), for which he was sentenced to 120 months' imprisonment to be followed by thirty years of supervised release.   A former fifth-grade teacher in Springville, New York, Noeson pleaded guilty after an FBI investigation revealed that he had engaged in sexually explicit communications with two underage females, Minor Female 1 ("MF1") and Minor Female 2 ("MF2"), and received child pornography.   On appeal, Noeson argues that his sentence was procedurally and substantively unreasonable because (i) the government withheld material

2

exculpatory evidence – namely, "a videotaped interview that the government conducted with [MF2] outside the presence of [Noeson] or his counsel" – in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), Noeson Br. at 30, and (ii) the district court subsequently relied on this video at sentencing, depriving Noeson "of his structural right to be present at and participate meaningfully at" his sentencing, *id.* at 39. Noeson also asserts that his thirty-year term of supervised release, "as well as all of the imposed 'standard' release conditions and two of the 'special' release conditions, are procedurally and substantively unreasonable." *Id.* at 46. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Noeson's Challenges to His Term of Imprisonment and Term of Supervised Release Are Barred by the Appeal Waiver.

The government asserts that the appeal waiver in Noeson's plea agreement – which provides that Noeson "knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than a term of imprisonment of 60 to 135 months . . . and a period of supervised release of 5 years to life," App'x at 43 – bars his challenges "to the

3

120-month term of imprisonment and 30-year term of supervised release," Gov't Br. at 19 (capitalization altered).    We agree.

"We review plea agreements, including waivers of the right to appeal, *de novo* and in accordance with general principles of the law of contract."    *United States v. Green*, 897 F.3d 443, 447 (2d Cir. 2018).    While we construe ambiguities in such waivers "strictly against the government," *id.*, their terms are "presumptively enforceable if [they] ha[ve] been entered into knowingly, voluntarily, and competently," *United States v. Lajeunesse*, 85 F.4th 679, 692 (2d Cir. 2023) (internal quotation marks omitted).    In part to protect defendants' ability to meaningfully negotiate with the government before deciding whether to plead guilty or stand trial, we have held that "[e]xceptions to th[e] presumption [of enforceability] occupy a very circumscribed area of our jurisprudence."    *Id.* (internal quotation marks omitted); *see also United States v. Borden*, 16 F.4th 351, 354–55 (2d Cir. 2021). Indeed, we have identified "only five circumstances where we will not enforce a waiver:    (1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed

4

to enunciate any rationale for the defendant's sentence; and (5) where the waiver was unsupported by consideration." *Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023) (alterations adopted and citation and internal quotation marks omitted). This case involves none of these circumstances.

To begin, Noeson's 120-month sentence and thirty-year term of supervised release fell within the ranges outlined in the plea agreement; in fact, the term of imprisonment fell well *below* Noeson's Guidelines range of 168 to 210 months. During the plea colloquy, Noeson unambiguously acknowledged that "so long as [the district court] sentence[d him] to 135 months or less" and "a period of supervised release of five years to life," he would "waive [his] right to appeal the sentence" and term of supervised release. App'x at 81–82. The magistrate judge then carefully reviewed the plea agreement with Noeson and confirmed that his plea was "voluntarily, knowingly, and intentionally made, and that [he] . . . had the advice of counsel of a competent attorney." *Id.* at 88. Noeson filed no objections to the magistrate judge's report and recommendation, which the district court adopted in accepting Noeson's guilty plea.

Nothing in the record suggests that the district court relied on "constitutionally impermissible factors" in sentencing Noeson, that the

government breached the plea agreement, or that the district court "failed to enunciate any rationale for [Noeson's] sentence." *Cook*, 84 F.4th at 122 (internal quotation marks omitted); *see* App'x at 131–34 (district court explaining the reasons for its sentence). And there can be no doubt that the government provided consideration for the bargain by "waiv[ing] its right to appeal any component of a sentence imposed by the Court [that] falls within or is greater than a term of imprisonment of 60 to 135 months." App'x at 43. Because Noeson's "sentence was reached in a manner that the plea agreement . . . anticipate[d]," *Lajeunesse*, 85 F.4th at 693 (internal quotation marks omitted), we conclude that the appeal waiver forecloses the challenge to his term of imprisonment and supervised release.[1] *See United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009) ("[I]n no circumstance may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain

---

[1] After briefing and oral argument concluded, the Supreme Court decided *Hunter v. United States*, No. 24-1063, 608 U.S. ---, 2026 WL 1751815 (U.S. June 18, 2026). There, the Court held "that an agreement not to appeal a sentence is unenforceable when it would result in a miscarriage of justice – meaning, when it would leave in place the kind of egregious error that would bring the judicial system into disrepute." *Id.* at *4. Notwithstanding his arguments to the contrary, *see* Noeson Fed. R. App. P. 28(j) Letter, Noeson cannot satisfy the "high bar" necessary for a miscarriage-of-justice exception, which applies only in "extreme cases" where "the justice system's basic integrity is at stake," *Hunter*, 2026 WL 1751815, at *8.

6

sentence, then appeal the merits of a sentence conforming to the agreement." (alteration adopted and internal quotation marks omitted)).

Noeson nonetheless seeks to evade the waiver in his plea agreement by alleging that "[t]he government plainly suppressed favorable evidence, in violation of *Brady*, when it withheld" a May 2023 forensic-video interview that the FBI conducted with MF2, from whom Noeson "solicit[ed] pornographic images." Noeson Br. at 35–36; *see also* Reply Br. at 23. He maintains that the video was "material" to his defense because "it included information necessary to impeach the government's uncharged allegations" that, among other things, "Noeson had solicited MF2 to fondle her brothers and to take pictures of other girls in her school bathroom." Noeson Br. at 35 (citing PSR ¶ 41). We are unpersuaded.

We have never held that a *Brady* violation vitiates an otherwise enforceable appeal waiver. But even assuming that it could, Noeson has not established a *Brady* violation here. "Generally, to establish that a *Brady* violation has occurred before a guilty plea, a defendant must show that (1) the government failed to disclose exculpatory evidence, and (2) the evidence was material." *United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022). Here, Noeson's trial counsel reviewed the video at the U.S. Attorney's Office in December 2023 *prior* to Noeson's guilty

plea.[2]  *See* Noeson Br. at 16 (acknowledging that "Noeson's trial counsel . . . view[ed] the video at the U.S. Attorney's Office").   In advance of the sentencing hearing, the government disclosed to both the district court and Noeson that it planned to include the video as part of its sentencing submission.   Noeson did not object, and as noted above, his counsel had already reviewed the video prior to Noeson's guilty plea.   It therefore cannot be argued that the government's submission of the video to the district court was somehow "*ex parte*."   *See Ex Parte*, Black's Law Dictionary 722 (11th ed. 2019) ("[W]ithout notice to or argument from the adverse party").   And it certainly was not withheld.[3]   Noeson's *Brady* challenge is therefore without merit.

## II.  The District Court Did Not Abuse Its Discretion in Imposing Special Conditions 7 and 10 of Noeson's Supervised Release.

Noeson next argues that Special Conditions 7 and 10 of his supervised release – which require him (i) "to abstain from the use of alcohol" both "[w]hile

---

[2] Noeson's appellate counsel also viewed the video at the U.S. Attorney's Office for the District of Columbia in September 2025, and the government provided an eleven-page transcript of the interview to counsel prior to his appeal.   In addition, this Court granted Noeson's motion – over the government's objection – to file the redacted transcript as a Confidential Appendix.

[3] Noeson further asserts that the district court committed procedural error and "deprived" him of "his structural right to be present at and participate meaningfully" in his sentencing because the government submitted a copy of the video interview "*ex parte* to the district court" for *in camera* review and then relied on that video at sentencing.   Noeson Br. at 39.   But this is merely a variation of his *Brady* argument, and fails for the same reasons described above.

in treatment and after discharge from treatment," and (ii) to refrain from "incur[ring] any form of debt including, but not limited to, use of existing credit cards, new credit cards, lines of credit, mortgages or private loans without the approval of the U.S. Probation Office" "[w]hile a fine, restitution[,] or assessment balance is outstanding" – are procedurally and substantively unreasonable.[4] App'x at 146; *see* Noeson Br. at 46.   We disagree.

District courts "retain[] wide latitude in imposing conditions of supervised release, and we therefore review a decision to impose a condition for abuse of discretion."   *United States v. Kunz*, 68 F.4th 748, 758 (2d Cir. 2023) (internal quotation marks omitted).   A district court may order special conditions of supervised release "so long as they are reasonably related to:   (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the protection of the public; and (D) the rehabilitative and medical care needs of the defendant."   *United States v. Parisi*, 821 F.3d 343, 348 (2d Cir. 2016) (internal quotation marks omitted); *see also* 18 U.S.C. § 3583(d).   And

---

[4] The government acknowledges that "[Noeson's] appeal waiver does not apply to the conditions of [his] supervised release."   Gov't Br. at 41.

9

because Noeson concedes that he did not object to his special conditions of supervised release in the district court, we review for plain error.

"To establish plain error, a defendant must demonstrate: (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019) (internal quotation marks omitted). "If all three conditions are met, we will then exercise our discretion to rectify this forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted); *see* Fed. R. Crim. P. 52(b). Finally, to be plain, an error must be "clear" under "binding precedent from the Supreme Court or this Court," or "so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object." *United States v. Esteras*, 102 F.4th 98, 108 (2d Cir. 2024) (internal quotation marks omitted).

Notwithstanding his conviction for "driving while ability impaired" in 2001, PSR ¶ 94 (capitalization altered); *see id.* ¶ 62, Noeson contends that "there is no basis in the record" for Special Condition 7 because the PSR indicates neither a history with "problem drinking" nor an "indication that alcohol . . . played any role in the instant offense," Noeson Br. at 52–53. But Special Condition 7 requires

10

Noeson to refrain from using alcohol "[w]hile in treatment and after discharge from treatment" "*if* substance abuse is indicated by [drug/alcohol] testing." App'x at 146 (emphasis added); *see id.* at 123. Because Noeson has not yet begun his term of supervision – and therefore no "substance abuse [has been] indicated by the testing" – this claim necessarily "depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Traficante*, 966 F.3d 99, 107 (2d Cir. 2020) (internal quotation marks omitted). It is thus not ripe for our review.

Noeson's argument as to Special Condition 10 also fails, though for different reasons. Special Condition 10 tracks the language of the advisory Sentencing Guidelines, which recommends "prohibiting the defendant from incurring new credit charges or opening additional lines of credit without approval of the probation officer unless the defendant is in compliance" with the "payment schedule" for his outstanding court-imposed financial obligations. U.S.S.G. § 5D1.3(b)(3)(B) (Nov. 2025 update); *cf. United States v. Thomas*, 299 F.3d 150, 154 (2d Cir. 2002) (underscoring that "[b]ecause the [d]istrict [c]ourt required [the defendant] to pay restitution, the Guidelines recommend the imposition of" a special condition "mirror[ing]" now-section 5D1.3(b)(3)(B)). Here, the district

11

court imposed (i) a $100 special assessment; (ii) a $2,000 assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act, *see* 18 U.S.C. § 2259A, due immediately; and (iii) a $5,000 mandatory assessment under the Justice for Victims of Trafficking Act, *see* 18 U.S.C. § 3014(a)(2), also due immediately. By requiring Noeson to refrain from incurring new debts while he complied with these financial obligations – which were statutorily required and "reasonably related" to "the nature and circumstances of [Noeson's] offense" *Parisi*, 821 F.3d at 348 (internal quotation marks omitted) – the district court did not abuse its discretion.

Nor did Special Condition 10 improperly "delegate to the Probation Department decision[-]making authority [that] would make [Noeson's] liberty itself contingent on a probation officer's exercise of discretion." *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). To the contrary, the special condition requires Noeson to refrain from incurring new debt, and it grants Probation the ability to *relax* that condition only if Noeson pays his assessments. In other words, the condition authorizes Probation to "execut[e] [Noeson's] sentence, but not [to] impos[e] it." *Id.* (citation and internal quotation marks omitted). On plain-error review, we cannot conclude that the district court abused its broad

discretion in imposing Special Conditions 7 and 10. *See Esteras*, 102 F.4th at 108; *Thomas*, 299 F.3d at 154 (voicing no delegation concerns with a similarly worded special condition).

## III. A Limited Remand is Appropriate Given Our Decision in *Maiorana.*

Finally, the government concedes that "Noeson is entitled to a limited remand for the district court to amend the written judgment as to eleven of the thirteen discretionary 'standard' conditions of supervised release that were not pronounced in open court." Gov't Br. at 17. We agree.

In *Maiorana*, we held that "a sentencing court intending to impose non-mandatory conditions of supervised release, including the 'standard' conditions described in [U.S.S.G.] § 5D1.3(c), must notify the defendant during the sentencing proceeding." *United States v. Maiorana*, 153 F.4th 306, 314 (2d Cir. 2025) (en banc); *see also id.* at 314 n.11 (applying this "new rule of criminal procedure" to "cases currently on direct review"). We made clear that "if the conditions are not pronounced, they may not later be added to the written judgment." *Id.* at 314.

Here, the sentencing predated *Maiorana*, and the district court did not pronounce Standard Conditions 2–9 and 11–13 of Noeson's supervised release before including them in the written judgment. The court likewise did not

13

"specifically incorporate by reference particular conditions that ha[d] been set forth in writing and made available to" Noeson. *Id.* And these conditions were not included in the PSR or discussed at Noeson's sentencing hearing. The government has therefore conceded that a remand is appropriate in light of *Maiorana*. Though we "of course, [are] not bound to accept the [g]overnment's concession that the court[] below erred on a question of law," *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953), we agree that vacatur of Standard Conditions 2–9 and 11–13 is appropriate to ensure that Noeson is "afforded the constitutionally grounded protections encompassed by the right to be present at sentencing," *Maiorana*, 153 F.4th at 314. On remand, the district court should address these standard conditions of Noeson's supervised release in accordance with the procedures laid out in *Maiorana*. *See id.* at 315.

However, because the district court *did* orally impose two of the standard conditions – one directing Noeson to "report in person to the probation office in the district where he is released" within "72 hours of [his] release from [the] custody of the Bureau of Prisons," App'x at 122 (Standard Condition 1), and the other prohibiting Noeson from "possess[ing] a firearm, ammunition, or other dangerous device," *id.* at 122–23 (Standard Condition 10) – we affirm their

14

imposition. To the extent that Noeson objects to any inconsistencies between the district court's pronouncement of these conditions and the written judgment, any discrepancy was non-substantive, *cf. United States v. Rosado*, 109 F.4th 120, 125 (2d Cir. 2024), and it is well established that "in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls," *Maiorana*, 153 F.4th at 310 (alteration rejected and internal quotation marks omitted). *Maiorana* therefore poses no barrier to the imposition of Standard Conditions 1 and 10.

\* \* \*

For the reasons set forth above, we **AFFIRM** the imposition of Special Conditions 7 and 10, as well as Standard Conditions 1 and 10, of Noeson's supervised release; **DISMISS** Noeson's additional challenges to his sentence and term of supervised release raised in the merits briefing pursuant to the appeal waiver in his plea agreement; and **VACATE** the imposition of Standard Conditions 2–9 and 11–13 of his supervised release. The case is **REMANDED** to the district court for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

15