25-483-cr
*United States v. Harris*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-six.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                                                  25-483-cr

JOY HARRIS,

> *Defendant-Appellant.*

_____

FOR APPELLEE:                          JERRY J. FANG (Meredith C. Foster and Jacob R. Fiddelman, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:    ALEXANDER SUSI (Mikhail Usher, *on the brief*) Usher Law Group, P.C., Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the amended judgment of the district court, entered on April 8, 2025, is **AFFIRMED**.

Defendant-Appellant Joy Harris appeals from the district court's amended judgment, following a jury trial at which Harris was found guilty of solicitation or receipt of a bribe by an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B), and extortion under color of official right, in violation of 18 U.S.C. § 1951. The conviction arose from Harris's employment, from 2015 to 2021, as Assistant Superintendent and then Superintendent of the New York City Housing Authority ("NYCHA"). In those roles, Harris was responsible for awarding construction and repair contracts under a certain dollar threshold at NYCHA developments and could do so without going through the prescribed competitive bid process and procurement department oversight required for larger contracts. The evidence at trial established that Harris used her authority to solicit bribes in exchange for awarding contracts and approving payment to certain contractors. Specifically, the record indicates that Harris accepted over $50,000 in bribes for work totaling approximately $500,000 in value. Following the jury's guilty verdict, the district court sentenced Harris principally to 41 months' imprisonment, to be followed by three years' supervised release.

On appeal, Harris asserts that her conviction should be reversed because: (1) she was deprived of the right to a fair trial due to improper judicial bias; (2) she was prejudiced by the district court's erroneous evidentiary ruling precluding her from cross-examining a government witness regarding an anonymous complaint; and (3) the prosecutor engaged in misconduct during

the summation by misrepresenting the trial evidence. In addition, Harris argues that her sentence was procedurally unreasonable because the district court erred in applying the two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**I. Judicial Bias**

Harris first contends that her Fifth and Sixth Amendment rights to a fair trial were violated because the district court "create[ed] an appearance of judicial bias" through "repeat[ed] interrupt[ion] [of] defense counsel's examination" while affording "significantly greater leeway to the government's presentation." Appellant's Br. at 2. We disagree.

"In reviewing a challenge to a trial judge's conduct, we determine not whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid[, but] . . . whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial." *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998) (alterations in original) (internal quotation marks omitted). Indeed, a trial judge "may actively participate in a jury trial" and "need not sit like a 'bump on a log.'" *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir. 1990) (internal quotation marks and citation omitted). Accordingly,

> judicial rulings and judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible."

*Francolino v. Kuhlman*, 365 F.3d 137, 143 (2d Cir. 2004) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Finally, because Harris did not object to the judicial conduct that she now

asserts demonstrates improper bias, we review for plain error. *See United States v. Filani*, 74 F.3d 378, 387 (2d Cir. 1996).

Harris has failed to demonstrate any judicial bias, let alone judicial bias that would be sufficient to call into question whether she received a fair trial. To support her claim, Harris enumerates certain instances where she contends that her counsel was "cut off" or "interrupt[ed]" during questioning of witnesses, whereas the government was not. Appellant's Br. at 7, 9. However, the record shows instances where the district court also "cut off" the government, overruled the government's objections, and sustained the defense's objections to the government's questions. For example, over the government's objection, the district court permitted Harris to cross-examine one of the government's witnesses, Sukhjit Singh, about alleged false statements in his asylum application. *See, e.g.*, *United States v. Robinson*, 635 F.2d 981, 985–86 (2d Cir. 1980) (explaining that the defendant failed to demonstrate judicial bias where, among other things, the record showed that "the judge sustained defense objections to Government questions" and "overruled objections to questions put by defense counsel"). Although Harris also suggests that the district court's evidentiary rulings demonstrate judicial bias, she has failed to identify a single erroneous evidentiary ruling (including the evidentiary challenge discussed *infra*), much less one that indicates judicial bias.

Harris's other alleged examples of judicial bias are similarly unavailing because they merely highlight instances of the district court properly exercising its "broad discretion in passing upon appropriate trial procedures," *United States v. Lombardozzi*, 335 F.2d 414, 417 (2d Cir. 1964), to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence," Fed. R. Evid. 611(a). For example, the district court repeatedly made clear its instructions to the defense were given for the purpose of promoting trial efficiency. *See, e.g.*,

4

App'x at 84–85 (noting that "we can save some time" by streamlining the defense's questioning); *id.* at 382 (requesting that defense counsel "not just repeat the direct" and noting that they had not "asked a question yet that [the witness] hasn't already answered"). Again, in an effort to increase trial efficiency, the district court made similar comments to the government during its presentation of evidence. *See, e.g.*, *id*. at 150 (addressing the prosecutor, "[D]o you think we could cut down on this responsive reading from plain, simple English documents?"); *id.* at 426 (addressing the prosecutor, "Counselor, I'm mystified as to why you put up the transcript and played the tape, and now you're, in effect, reading it back to her. Could we move along?"); *see also id*. at 168 (addressing defense counsel, "And I criticized the government for doing it, and I'm criticizing you for doing it. The jury has the document, they can all read, and there isn't reason to take time here reading extensively.").

Finally, the district court guarded against the jury drawing any inferences from the district court's evidentiary rulings and trial management by emphasizing to the jury in its instructions that they are the "sole and exclusive judges of the facts," and that:

> I don't mean to indicate any opinion as to the facts or as to what your verdict should be. My rulings during the trial, any questions that I asked, and any comments I may have made in managing the trial are no indication of any views that I might have of what your decision ought to be or as to whether or not the government has proved its case.

*Id*. at 527; *see United States v. Mickens*, 926 F.2d 1323, 1327–28 (2d Cir. 1991) (explaining that "[t]he district court's occasional intemperate remarks did not substantially taint [the defendants'] trial" and "any possible prejudice to [the defendant] was cured by the court's cautionary instruction").

In sum, Harris's claim of judicial bias is not supported by the record and her related fair trial claim is without merit.

## II. Evidentiary Ruling Regarding Anonymous Complaint

Harris argues that the district court erred in limiting, pursuant to Federal Rule of Evidence 403, her questioning of government witness Suraj Parkash, one of the alleged bribed contractors, regarding an anonymous complaint made about him to law enforcement alleging fraud. Harris claims that this complaint "reflect[s] [Parkash's] credibility," which is "admissible for impeachment" purposes under Federal Rule of Evidence 608(b). Appellant's Br. at 16.

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (internal quotation marks and citations omitted). A trial court has "broad discretion" in determining whether to exclude evidence under Rule 403. *United States v. Awadallah*, 436 F.3d 125, 134 (2d Cir. 2006). "[S]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Al–Moayad*, 545 F.3d 139, 159–60 (2d Cir. 2008) (internal quotation marks and citation omitted).

We discern no abuse of discretion in the district court's decision to limit the defense's questioning of Parkash under Rule 403. As the district court noted, the complaint at issue was both anonymous and "never prove[n]" with respect to Parkash. App'x at 18. Indeed, Harris's counsel acknowledged that any questioning regarding the anonymous complaint was likely only "tangent[i]ally related" to Parkash's testimony and "most likely not" relevant to the proceedings. *Id.* at 18–19. Moreover, as the government noted, cross-examination of the witness on the anonymous complaint presented the danger of unfair prejudice and risked confusion of issues by

the jury.  In short, the district court did not abuse its discretion, and there are no grounds to disturb its evidentiary ruling.

**III.    Prosecutorial Misconduct**

Harris also contends that the government committed prosecutorial misconduct during its summation by misstating the evidence when it argued that cash deposits into her bank account and her spending on luxury items were evidence of her receipt of bribe payments, and those misrepresentations resulted in the defendant being deprived of a fair trial.

A defendant who alleges "prosecutorial misconduct in summation bears a heavy burden." *United States v. Williams*, 690 F.3d 70, 74–75 (2d Cir. 2012) (internal quotation marks and citation omitted).  "The defendant must show not simply that a particular summation comment was improper," but that "the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced [them], such that the resulting conviction was a denial of due process."  *Id.* at 75 (alteration adopted) (internal quotation marks and citation omitted).  Because Harris did not object to these statements at trial, we review any alleged misconduct under a plain error standard and "reject any assignment of error that does not amount to flagrant abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant."  *Id.* (internal quotation marks and citation omitted).

Here, contrary to Harris's assertion, the government never argued in its summation that her NYCHA paychecks were the only legitimate source of income in her bank account.  Instead, the government argued that the *cash deposits* were evidence of bribes.  *See* App'x at 480 ("For example, between her Capital One account and her MCU accounts, the defendant made about $19,000 in cash deposits from 2019 to 2021.  That is an enormous amount of cash deposits,

especially for someone is who is salaried government employee, someone who gets a regular paycheck by direct deposit, someone who has no reason to be getting cash as part of that job.").  The government further noted how these cash deposits coincided with Harris purchasing thousands of dollars in luxury items.  *See id*. at 484 ("As [the summary witness] walked you through, from around 2019 to 2021, the defendant spent over $10,000 at luxury stores . . . .  One of these two purchases might not raise any flags, people can buy nice things, but if you look at them all together, they are hard to ignore.  This is a lot of money to be spending at high-end stores on a government salary.  But it's not so much money if you have an extra $26,000 in cash bribes coming into your account.").[1]

As we have emphasized, "[t]he government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Edwards*, 342 F.3d 168, 181 (2d Cir. 2003) (internal quotation marks and citation omitted).  Here, the prosecutor's statements in summation challenged by Harris were fair arguments based upon reasonable inferences that the jury could draw from the trial evidence.  Thus, Harris has failed to demonstrate any prosecutorial misconduct that would warrant a new trial.

**IV.    Obstruction-of-Justice Enhancement**

Finally, Harris argues that the district court erred in applying a sentencing enhancement for obstruction of justice, pursuant to Sentencing Guidelines Section 3C1.1, based on a determination that she perjured herself at trial by categorically denying the acceptance of bribes.  Harris primarily

---

[1] To the extent that Harris contends that the government falsely implied that deposits into her MCU bank account prior to 2019 were cash deposits even though they were actually her NYCHA paychecks, that contention is contradicted by the record.  Indeed, in its summation, the government expressly noted to the jury that "[the bank] keeps only check images going back five to six years, so it's impossible to tell whether an ATM deposit prior to that period is cash or check." *Id*. at 482.  Therefore, the government never suggested to the jury that it should infer that any of the pre-2019 deposits reflected cash bribes; rather, as noted above, it focused on the 2019 to 2021 period.

argues that her testimony—"that she received various forms of income, which was not limited to her work at NYCHA, including child support, a landscaping business, and insurance payments"—demonstrated that she "did, in fact, cash checks before depositing them into her bank account, and did receive additional income from more than one source," and therefore "the Court's findings are not compatible with the evidence." Appellant's Br. at 22, 24.

To apply the two-level obstruction of justice enhancement under Section 3C1.1, a district court must find by a preponderance of the evidence "that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *United States v. Agudelo*, 414 F.3d 345, 349 (2d Cir. 2005) (internal quotation marks and citation omitted). "Where a defendant has preserved a challenge to a sentencing enhancement, we apply a mixed standard of review to assess whether the district court properly applied the enhancement." *United States v. Esteras*, 102 F.4th 98, 104 (2d Cir. 2024). A district court's factual findings are reviewed for clear error, which we will only find where the record as a whole leaves us "'with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Cuevas*, 496 F.3d 256, 267 (2d Cir. 2007)). "We then review *de novo* the district court's ultimate legal determination as to whether those factual findings support an enhancement under the Guidelines." *Id.* Although "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," a determination that "encompasses all of the factual predicates for a perjury finding" may be sufficient justification for the application of the enhancement. *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

We find no clear error with respect to the district court's factual determinations, nor any error with respect to its legal analysis. In deciding whether to apply the enhancement, the district court explained that "Ms. Harris categorically denied under oath accepting any cash bribe from

9

each of the four contractors who testified that she solicited and accepted bribes from them" and did so "in the face of being confronted . . . with evidence" demonstrating that (1) numerous cash deposits were made into her bank account despite the fact that her salary was paid via direct deposit; (2) some of those cash deposits temporally aligned with communications with the bribed contractors; and (3) no documentation had been provided to support Harris's explanation that the cash deposits came from other means. App'x at 570–73. In light of the record, the district court determined that the obstruction enhancement was applicable because Harris's testimony was blatantly contradicted by the overwhelming evidence in the case. *See, e.g.*, *United States v. Lincecum*, 220 F.3d 77, 80 (2d Cir. 2000) ("Where the district court finds that the defendant has clearly lied in a statement made under oath, the court need do nothing more to satisfy *Dunnigan* than point to the obvious lie and find that the defendant knowingly made a false statement on a material matter." (internal quotation marks and citation omitted)).

Harris argues that the district court erred by not crediting her testimony regarding the various sources of income in her bank account, including her explanation that she would cash checks before depositing them into her bank account and that some of the cash deposits reflected borrowing from her pension and her insurance policies. However, the district court acted well within its discretion in rejecting her testimony on these issues as implausible, especially in the absence of any records to support such testimony and in light of the other evidence in the case. *See, e.g.*, App'x at 565 (finding Harris's testimony that she would sometimes take cash to a check-cashing service and then deposit that cash back into her bank account was "ludicrous" and seemed "highly likely to have been a very deliberate lie"); *id*. at 572–73 (finding her testimony, without any documentation, that some of the cash deposits reflected borrowing from her pension and insurance policies as "inconceivable"). In any event, as noted above, the district court separately

found that her testimony that she never was paid a bribe by any contractor was perjurious, and that finding provides an independent basis for the enhancement.

Finally, although Harris asserts that the district court merely punished her "for the audacity of testifying on her own behalf," Appellant's Br. at 24, no such conclusion can be reasonably drawn from this record. In fact, the district court emphasized that it was not applying the two-level enhancement lightly and that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under Section 3C1.1 for committing perjury." App'x at 569–70. In sum, we find no procedural error in the district court's decision to impose the Section 3C1.1 enhancement based upon Harris's perjured testimony at trial.

* * *

We have considered Harris's remaining arguments and conclude that they are without merit. For the foregoing reasons, the amended judgment of the district court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11